**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

DAVID E. PAGAN and )
CRISTINA ORTIZ, )
on behalf of plaintiffs and a class, )
  )
        Plaintiffs, )
  )    Case No. 1:19-cv-07935
    vs. )
  )
RUSHMORE LOAN )
MANAGEMENT SERVICES LLC, )
  )
        Defendant. )

## COMPLAINT – CLASS ACTION

1.      Plaintiffs, David E. Pagan and Cristina Ortiz, bring this action against defendant Rushmore Loan Management Services LLC to secure redress for improper and deceptive collection conduct. Plaintiffs allege violations of the Fair Debt Collection Practices Act, 15 U.S.C. §1692 et seq. ("FDCPA"), the Illinois Consumer Fraud Act and breach of contract.

2.      The FDCPA broadly prohibits unfair or unconscionable collection methods, conduct which harasses or abuses any debtor, and the use of any false or deceptive statements in connection with debt collection attempts. 15 U.S.C. §§ 1692d, 1692e, and 1692f. It also requires debt collectors to give debtors certain information. 15 U.S.C. § 1692g.

3.      In enacting the FDCPA, Congress found that: "[t]here is abundant evidence of the use of abusive, deceptive, and unfair debt collection practices by many debt collectors. Abusive debt collection practices contribute to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy." 15 U.S.C. §1692(a).

4.      Because of this, courts have held that "the FDCPA's legislative intent emphasizes

the need to construe the statute broadly, so that we may protect consumers against debt

collectors' harassing conduct." and that "[t]his intent cannot be underestimated." *Ramirez v.*

*Apex Financial Management LLC*, 567 F.Supp.2d 1035, 1042 (N.D.Ill. 2008).

5.      The FDCPA encourages consumers to act as "private attorneys general" to

enforce the public policies and protect the civil rights expressed therein. *Crabill v. Trans Union,*

*LLC*, 259 F.3d 662, 666 (7th Cir. 2001).

6.      Plaintiffs seek to enforce those policies and civil rights which are expressed

through the FDCPA, 15 U.S.C. §1692 et seq.

## JURISDICTION AND VENUE

7.      This Court has jurisdiction under 15 U.S.C. §1692k, and 28 U.S.C. §1331.

8.      Venue in this District is proper because Defendant's conduct impacted Plaintiffs

in this District, and a material portion of the events complained of occurred in this District.

## PARTIES

9.      Plaintiffs David E. Pagan and Cristina Ortiz reside in a home which they own in

Oswego, Illinois.

10.      Defendant  Rushmore Loan Management Services LLC is a limited liability

company organized under Delaware law with principal offices at 15480 Laguna Canyon Road,

Irvine, CA 92618.  It does business in Illinois.  Its registered agent and office is Illinois

Corporation Service Co., 801 Adlai Stevenson Drive, Springfield, IL 62703.

11.      Defendant Rushmore Loan Management Services LLC, is engaged in the

mortgage servicing business and has a portfolio exceeding $1 million.

12.      Defendant Rushmore Loan Management Services LLC, is also a special servicer,

2

servicing loans that are in default when it obtains them.

13.     Rushmore has applied for ratings as a special servicer with Moody's and other rating agencies.

14.     For example, on August 22, 2018, Moody's reaffirmed Rushmore's special servicer SQ3 rating.

(https://www.moodys.com/research/Moodys-assigns-an-SQ-assessment-of-SQ3-to-Rushmore-Loan--PR_387455?WT.mc_id=AM~RmluYW56Z W4ubmV0X1JTQl9SYXRpbmdzX05ld3NfTm9)

15.     As of December 2017, Rushmore's residential mortgage servicing portfolio contained 166,925 loans with an unpaid principal balance of approximately $29.5 billion.

## FACTS

16.     Plaintiffs' loan has been in default and accelerated since 2016.

17.     On information and belief, the owner of Plaintiffs' loan is First Guaranty Mortgage Corporation, and Rushmore services the mortgage for the owner.

18.     Servicing of Plaintiffs' loan was transferred to Rushmore effective December 3, 2018. (Appendix A)

19.     On December 11, 2018, Rushmore sent Plaintiffs, through counsel, a "notice of debt" (Appendix B).

20.     The "notice of debt" stated that the amount of the debt might increase due to "late charges."

21.     No late charges could be assessed because the loan had been accelerated.

22.     On or about December 17, 2018, Rushmore sent Plaintiffs, through counsel, a statement (Appendix C) containing an "acceleration amount" and also stating that a late charge will be charged if payment is not received by a specified date.

3

23.     After a loan is accelerated, there are no scheduled payments, and no late charges are appropriate. *See Wells Fargo Bank Minn. N.A. v. Guarnieri*, 308 B.R. 122, 128 (D. Conn. 2004) ("However, once the loan is accelerated, as was the case here, there are no further monthly payments due and the lender is therefore not required to incur administrative expense in handling late payments."); *Jackson v. Carrington Mortg. Servs.*, No. 17-60516-CIV, 2017 U.S. Dist. LEXIS 191932, at *9 (S.D. Fla. Nov. 16, 2017).

24.     On January 10, 2018, counsel for Plaintiffs sent Rushmore a letter indicating that Plaintiffs reside in the property and did not consent to Rushmore's agents entering the property. The letter also inquired as to the status of the loan modification application that had been submitted by Plaintiffs prior to the servicing transfer.

25.     On February 8, 2019, Rushmore offered Plaintiffs a trial loan modification.

26.     The loan is an FHA loan.

27.     Under FHA regulations, 24 C.F.R. § 203.377, "The mortgagee, upon learning that a property subject to a mortgage insured under this part is vacant or abandoned, shall be responsible for the inspection of such property at least monthly, if the loan thereon is in default. When a mortgage is in default and a payment thereon is not received within 45 days of the due date, and efforts to reach the mortgagor by telephone within that period have been unsuccessful, the mortgagee shall be responsible for a visual inspection of the security property to determine whether the property is vacant. The mortgagee shall take reasonable action to protect and preserve such security property when it is determined or should have been determined to be vacant or abandoned until its conveyance to the Secretary, if such action does not constitute an illegal trespass. . . . ."

4

28.     The FHA interprets the regulation to mean that once a property has been found to be occupied, no further inspections may be charged.  HUD Handbook 4330.1 Ch. 9-9(A)(c)(2)(d); Mortgagee Letter 81-26, 1981 WL 389744 at *1 (June 16, 1981).

29.     Furthermore, the FHA regulations are incorporated into the note and mortgage, and the restriction limits what may be charged to the borrower.  *In re Ruiz*, 501 B.R. 76, 79 (E.D. Pa. 2013); *Riggs-Degraftenreed v. Wells Fargo Home Mortgage, Inc.,* 4:13cv669, 2016 WL 393868 (E.D. Ark. Jan. 29, 2016).

30.     Plaintiffs have continually occupied and maintained the mortgaged property.

31.     Notwithstanding Rushmore's knowledge of Plaintiffs' occupancy of the property, Rushmore charged Plaintiffs $20 property inspection fees for inspections on: December 27, 2018, January 25, 2019, February 28, 2019, March 28, 2019 and April 25, 2019.

32.     On information and belief, each inspection confirmed that Plaintiffs occupied the property, and found the property to be in satisfactory condition.

33.     Rushmore sent included the charges on the monthly mortgage statements it issued.        34.     Such fees were unauthorized and improper.

35.     The fees were added to Plaintiffs' outstanding mortgage balance every month as they were incurred, and increased the past due amount, which made it harder for Plaintiffs to rehabilitate the loan, and which increased the amount needed to payoff the loan.

36.      Class members may be applying for loan modifications, as Plaintiffs did. The unlawful inspection fees are likely to be applied to these class members' modified principal balances if their loan modification requests are granted as mortgage owners and servicers such as Rushmore normally include all such fees.  On information and belief the property inspection fees

were included in the principal balance in Plaintiffs' permanent loan modification, which they are now obligated to pay, and which they have been paying since it was granted in June, 2019.

37.     Plaintiffs agreed to the loan modification because they feared losing their home, and they were concerned about the fees that were being added to their balance every month.

## COUNT I – FAIR DEBT COLLECTION PRACTICES ACT – PROPERTY INSPECTION FEES

38.     Plaintiffs incorporate paragraphs 1-37.

39.     Defendant violated 15 U.S.C. §§1692, 1692e(2), 1692e(10), 1692f and 1692f(1) by charging Plaintiffs for unauthorized property inspection fees and representing that it had the right to collect a balance that included unauthorized property inspection fees.

40.     Section 1692e provides:

> **§ 1692e.     False or misleading representations**
> **A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section: . . .**
>
> > **(2)     The false representation of--**
> >
> > > **(A)     the character, amount, or legal status of any debt; . . .**
> >
> > **(10)     The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer. . . .**

41.     Section 1692f provides:

> **§ 1692f.     Unfair practices**
> **A debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt . . . the following conduct is a violation of this section:**
>
> > **(1)     The collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such**

**amount is expressly authorized by the agreement creating the debt or permitted by law . . . .**

## CLASS ALLEGATIONS

42.     Plaintiffs bring this claim on behalf of a class.

43.     The class consists of (a) all individuals (b) who had an FHA loan serviced by Rushmore Loan Management Services, LLC (c) which was past due when Rushmore first began servicing the loan (d) whose property address and correspondence address were the same in Rushmore's records and (e) were charged property inspection fees by Rushmore while still occupying the property, (f) where either the charge was made or a statement referring to the charge was sent on or after a date one year prior to the filing of this action.

44.     On information and belief, there are more than 40 class members, and the class is so numerous that joinder of all members is not practicable.

45.     There are questions of law and fact common to the class members, which common  questions predominate over any questions relating to individual class members.  The predominant common questions are:

a.      Whether the inspection fees were authorized;

b.      Whether imposition of and charging for the inspection fees violated the FDCPA.

46.     Plaintiffs' claim is typical of the claims of the class members.  All have the same factual and legal basis.

47.     Plaintiffs  will fairly and adequately represent the class members.  Plaintiffs have retained counsel experienced in class actions and consumer litigation.

48.     A class action is superior for the fair and efficient adjudication of this matter, in

7

that:

   a.  Individual actions are not economically feasible.

   b.  Members of the class are likely to be unaware of their rights;

   c.  Congress intended class actions to be the principal enforcement

mechanism under the FDCPA

  WHEREFORE, the Court should enter judgment in favor of Plaintiffs and the class and

against Defendant for:

   i.  Statutory damages;

   ii.  Actual damages;

   iii.  Attorney's fees, litigation expenses and costs of suit;

   iv.  Such other and further relief as the Court deems proper.

## COUNT II – CONSUMER FRAUD ACT

49.  Plaintiffs incorporate paragraphs 1-37.

50.  Rushmore  engaged in unfair and deceptive acts and practices, in violation of 815

ILCS 505/2,  by charging Plaintiffs for property inspection fees.

51.  Rushmore engaged in such conduct in the course of trade and commerce.

## CLASS ALLEGATIONS

52.  Plaintiffs bring this claim on behalf of a class.

53.  The class consists of (a) all individuals (b) who had an FHA loan serviced by

Rushmore Loan Management Services, LLC (c) which was secured by property in Illinois, (d)

whose property address and correspondence address were the same in Rushmore's records and

(e) were charged property inspection fees by Rushmore while still occupying the property, (f)

8

where either the charge was made or a statement referring to the charge was sent on or after a date 3 years prior to the filing of this action.

54.     On information and belief, there are more than 40 class members, and the class is so numerous that joinder of all members is not practicable.

55.     There are questions of law and fact common to the class members, which common questions predominate over any questions relating to individual class members.  The predominant common questions are:

       a.     Whether the inspection fees were authorized;

       b.     Whether imposition of and charging for the inspection fees violated the Consumer Fraud Act.

56.     Plaintiffs' claim is typical of the claims of the class members.  All have the same factual and legal basis.

57.     Plaintiffs will fairly and adequately represent the class members.  Plaintiffs have retained counsel experienced in class actions and consumer litigation.

58.     A class action is superior for the fair and efficient adjudication of this matter, in that:

       a.     Individual actions are not economically feasible.

       b.     Members of the class are likely to be unaware of their rights;

WHEREFORE, the Court should enter judgment in favor of Plaintiffs and the class and against Defendant for:

       i.     Actual damages;

       ii.     Punitive damages;

    iii.     An order requiring cancellation of the charges;

    iv.     Attorney's fees, litigation expenses and costs of suit;

    vii.    Such other and further relief as the Court deems proper.

## COUNT III – BREACH OF CONTRACT

59.    Plaintiffs incorporate paragraphs 1-37.

60.    Defendant violated the note and mortgage by charging Plaintiffs for property inspection fees that were not authorized by the contract or HUD.

61.    Plaintiffs were damaged by this conduct because this increased their debt and reduced their equity in their property.

## CLASS ALLEGATIONS

62.    Plaintiffs bring this claim on behalf of a class.

63.    The class consists of (a) all individuals (b) who had an FHA loan serviced by Rushmore Loan Management, LLC (c) whose property address and correspondence address were the same in Rushmore's records and (d) were charged property inspection fees by Rushmore while still occupying the property, (e) where either the charge was made or a statement referring to the charge was sent on or after a date 10 years prior to the filing of this action.

64.    On information and belief, there are more than 40 class members, and the class is so numerous that joinder of all members is not practicable.

65.    There are questions of law and fact common to the class members, which common questions predominate over any questions relating to individual class members. The

predominant common questions are:

        a.     Whether the inspection fees were authorized;

        b.     Whether imposition of and charging for the inspection fees violated the Plaintiffs and the class members' mortgage contracts.

66.     Plaintiffs' claim is typical of the claims of the class members.  All have the same factual and legal basis.

67.     Plaintiffs will fairly and adequately represent the class members.  Plaintiffs have retained counsel experienced in class actions and consumer litigation.

68.     A class action is superior for the fair and efficient adjudication of this matter, in that:

        a.     Individual actions are not economically feasible.

        b.     Members of the class are likely to be unaware of their rights;

WHEREFORE, the Court should enter judgment in favor of Plaintiffs and the class and against Defendant for:

        i.     Actual damages;

        ii.     Costs of suit;

        iii.     Such other and further relief as the Court deems proper.

## COUNT IV – FAIR DEBT COLLECTION PRACTICES ACT – LATE CHARGES ON ACCELERATED LOAN

69.     Plaintiffs incorporate paragraphs 1-37.  This is an individual claim.

70.     The December 11, 2018  "notice of debt" (Appendix B) and December 17, 2018 statement (Appendix C) stated that the amount of the debt might increase due to "late charges."

71.     No late charges could be assessed on an accelerated loan.

11

72.     Defendant cannot legally impose late charges for failure to make monthly payments after the loan has been accelerated, and reinstatement had not been sought, as in this case. *Rizzo v. Pierce & Assocs.*, 351 F.3d 791, 793 n.1 (7th Cir. 2003) (citing sixteen cases for the proposition that "a lender cannot demand payment of late fees for failure to make monthly payments after the loan has been accelerated").

73.     While a note may provide for a lender to collect late charges when an installment is not received by a due date, those installments are no longer "due" after the lender has accelerated the note and made demand upon the borrower.

74.     Defendant's threat that late fees will be imposed is deceptive, false and misleading, as late fees cannot be imposed in a case like this where the loan has been accelerated and no reinstatement has been sought.

75.     The reference to "late charges" was misleading and violated 15 U.S.C. §§1692e, 1692e(2), 1692e(10) and 1692g.

WHEREFORE, the Court should enter judgment in favor of Plaintiffs and against Defendant for:

    i.  Statutory damages;

    ii.  Actual damages;

    iii.  Attorney's fees, litigation expenses and costs of suit;

    iv.  Such other and further relief as the Court deems proper.

*/s/Daniel A. Edelman*
Daniel A. Edelman

Daniel A. Edelman
Tara L. Goodwin

12

Bryan G. Lesser
**EDELMAN, COMBS, LATTURNER**
     **& GOODWIN, LLC**
20 South Clark Street, Suite 1500
Chicago, IL 60603-1824
(312) 739-4200
(312) 419-0379 (FAX)
Email address for service:
courtecl@edcombs.com

## NOTICE OF LIEN AND ASSIGNMENT

Please be advised that we claim a lien upon any  recovery herein for 1/3 or such amount as a court awards.   All rights relating to attorney's fees have been assigned to counsel.


*/s/Daniel A. Edelman*
Daniel A. Edelman


Daniel A. Edelman
**EDELMAN, COMBS, LATTURNER
& GOODWIN, LLC**
20 S. Clark Street, Suite 1500
Chicago, Illinois  60603
(312) 739-4200
(312) 419-0379 (FAX)

14