**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| DAVID E. PAGAN and CRISTINA ORTIZ, individually and on behalf of a class, | ) ) ) | Case No.: 1:19-cv-07935 Honorable Andrea R. Wood |
| Plaintiffs, | ) ) | |
| v. | ) | |
| RUSHMORE LOAN MANAGEMENT SERVICES LLC, | ) ) ) | |
| Defendant. | ) ) | |

**DEFENDANT'S RULE 12(b)(6) MOTION TO DISMISS**
**PLAINTIFF'S COMPLAINT AND INCORPORATED MEMORANDUM OF LAW**

**TABLE OF CONTENTS**

Page

INTRODUCTION ...................................................................................................................1

ALLEGATIONS IN THE PLEADINGS.................................................................................2

LEGAL STANDARD...............................................................................................................4

ARGUMENT .............................................................................................................................5

I.    Counts I, II, and III are barred by estoppel and waiver; Counts I and II are additionally barred by the voluntary payment doctrine. ...................................................................5

    A.    Plaintiffs are estopped from challenging the late fees that they were aware of and agreed to pay as part of the Loan Modification. ...........................................................6

    B.    Plaintiffs waived their claims under Counts I through III. .........................................8

    C.    Counts II and III are barred by the voluntary payment doctrine.................................9

II.    Both of Plaintiffs' FDCPA claims (Counts I and IV) should be dismissed because the Total Debt Notice and monthly mortgage statements are informational and the CFPB exempts debt collectors from FDCPA liability arising from monthly mortgage statements....................................................................................................................11

    A.    The Total Debt Notice is required by § 1692g and all the statements it contains are purely informational....................................................................................................12

    B.    The CFPB exempts debt collectors from liability where monthly mortgage statements, such as the ones here, are required by—and comply with—TILA.........14

III.    Count IV should also be dismissed because the Total Debt Notice and Mortgage Statement are not misleading. .......................................................................................17

    A.    Late fees are recoverable upon reinstatement per the terms of Plaintiffs' Mortgage and applicable Seventh Circuit law; Rushmore's communications were therefore not deceptive or misleading ...............................................................................................17

    B.    Rushmore's Mortgage Statement substantially tracks the CFPB-approved template and is thus not misleading, unfair, or deceptive as a matter of law. ..........................20

CONCLUSION.........................................................................................................................22

82071201v.5

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Anderson v. Holy See,*
  *See*, 878 F. Supp. 2d 923, 933 (N.D. Ill. 2012) ......................................................................8

*Antoine v. Carrington Mortg. Servs. LLC,*
  No. 0:17-CV-61216-WPD, 2017 WL 3404389 (S.D. Fla. Aug. 8, 2017) ..............................15

*Ashcroft v. Iqbal,*
  556 U.S. 662 (2009) .............................................................................................................4, 5

*Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters,*
  459 U.S. 519 (1983) ..................................................................................................................5

*Bailey v. Sec. Nat'l Servicing Corp.,*
  154 F.3d 384 (7th Cir. 1998) .............................................................................................11, 12

*Bell Atl. Corp. v. Twombly,*
  550 U.S. 544 (2007) ..................................................................................................................5

*Brooks v. Ross,*
  578 F.3d 574 (7th Cir. 2009) .....................................................................................................5

*Brown v. Select Portfolio Servicing, Inc.,*
  No. 16-62999-CIV, 2017 WL 1157253 (S.D. Fla. Mar. 24, 2017) ........................................15

*Brunt v. Serv. Employees Int'l Union,*
  284 F.3d 715 (7th Cir. 2002) ...................................................................................................16

*Delgado v. Client Services, Inc.,*
  17 C 4364, 2018 WL 1193741, at *3 (N.D. Ill. Mar. 7, 2018) ...............................................22

*E.E.O.C. v. Concentra Health Servs., Inc.,*
  496 F.3d 773 (7th Cir. 2007) .....................................................................................................4

*Freeburg v. Deere & Co.,*
  No. 411CV04035SLDJEH, 2014 WL 1258029 (C.D. Ill. Mar. 27, 2014) ...............................6

*Gburek v. Litton Loan Servicing LP,*
  614 F.3d 380 (7th Cir. 2010) ...................................................................................................12

*Green v. Specialized Loan Servicing LLC,*
  766 F. App'x 777 (11th Cir. 2019) ...........................................................................................15

82071201v.5

*Grot v. First Bank of Schaumburg*,
    684 N.E.2d 1016 (Ill. App. Ct. 1st Dist. 1997) ...................................................................6, 8

*Hardaway v. CIT Group/Consumer Fin. Inc.*,
    836 F. Supp. 2d 677 (N.D. Ill. 2011) ...................................................................2

*Heckler v. Cmty. Health Services of Crawford County, Inc.*,
    467 U.S. 51 (1984) ...................................................................6

*Helmick v. Carter*,
    171 Ill. App. 25 (3d Dist. 1912) ...................................................................10

*Hill v. DLJ Mortg. Capital, Inc.*,
    No. 15-CV-3083 (SJF) (AYS), 2016 WL 5818540 (E.D.N.Y. Oct. 5, 2016) ........................16

*Home Ins. Co. v. Cincinnati Ins. Co.*,
    821 N.E.2d 269 (Ill. 2004) ...................................................................9

*Lackey v. First Nat. Bank of Oblong*,
    32 N.E.2d 949 (Ill. App. Ct. 4th Dist. 1941) ...................................................................10

*Levenstein v. Salafsky*,
    164 F.3d 345 (7th Cir. 1998) ...................................................................2

*Lox v. CDA, Ltd.*,
    689 F.3d 818 (7th Cir. 2012) ...................................................................18

*Matmanivong v. National Creditors Connection, Inc.*,
    79 F. Supp. 3d 864 (N.D. Ill. 2015) ...................................................................16

*McIntosh v. Walgreens Boots All., Inc.*,
    2019 IL 123626, 135 N.E.3d 73 ...................................................................9

*Michalowski v. Flagstar Bank, FSB*,
    01 C 6095, 2002 WL 113905 (N.D. Ill. Jan 25, 2002) ...................................................................2

*Molina v. First Line Sols. LLC*,
    566 F. Supp. 2d 770 (N.D. Ill. 2007) ...................................................................7, 8

*NewSpin Sports, LLC v. Arrow Elecs., Inc.*,
    910 F.3d 293 (7th Cir. 2018) ...................................................................5

*Oberg v. Blatt*,
    No. 14 C 7369, 2015 WL 9478213 (N.D. Ill. Dec. 29, 2015) ...................................................................21

*Parungao v. Cmty. Health Sys., Inc.*,
    858 F.3d 452 (7th Cir. 2017) ...................................................................5

82071201v.5

*People v. Blair*,
  831 N.E.2d 604 (Ill. 2005) .......................................................................8

*Pettit v. Retrieval Masters Creditors Bureau, Inc.*,
  211 F.3d 1057 (7th Cir. 2000) .................................................................18

*Randazzo v. Harris Bank Palatine, N.A.*,
  262 F.3d 663 (7th Cir. 2001) ....................................................................9

*Rizzo v. Pierce & Assocs.*,
  351 F.3d 791 (7th Cir. 2003). (*Id.*) ............................................17, 18, 19

*Saafir v. Bayview Loan Servicing, LLC*,
  No. CV 17-3735 (RBK/JS), 2018 WL 1069413 (D.N.J. Feb. 26, 2018).........15, 21

*Saccameno v. Ocwen Loan Servicing, LLC*,
  15 C 1164, 2015 WL 7293530 (N.D. Ill. Nov. 19, 2015).....................................12

*In re Scarlett Z.-D.*,
  28 N.E.3d 776 (Ill. 2015) ........................................................................6

*Shelley v. Ocwen Loan Servicing, LLC*,
  1:13-CV-506-RLY-DKL, 2013 WL 4584649 (S.D. Ind. Aug. 28, 2013) ...............13

*Smith v. Prime Cable of Chicago*,
  276 Ill. App. 3d 843, 658 N.E.2d 1325 (1st Dist. 1995)....................................9, 10

*Stone's Beauty Shops v. Morrison Serv. Ass'n*,
  1 N.E.2d 816 (Ill. App. Ct. 1st Dist. 1936)..................................................10

*Takiff Properties Group Ltd. #2 v. GTI Life, Inc.*,
  124 N.E.3d 11 (Ill. App. Ct. 1st Dist. 2018).................................................9

*Taylor v. Cavalry Inv., LLC*,
  365 F.3d 572 (7th Cir. 2004) ...................................................................19

*Wagoner v. EverHome Mortg. Inc.*,
  No. CV 17-8081 (JLL), 2018 WL 2230553 (D.N.J. May 16, 2018) ......................15

*Wahl v. Midland Credit Mgmt., Inc.*,
  556 F.3d 643 (7th Cir. 2009) ...............................................................18, 19

*Whalen v. Specialized Loan Servicing, LLC*,
  155 F. Supp. 3d 905 (W.D. Wis. 2016) .....................................................13

**Statutes and Rules**

15 U.S.C. § 1692e .................................................................................11, 13

15 U.S.C. § 1692g ........................................................................................... 11, 12, 13

15 U.S.C. § 1692k(e) ..................................................................................................... 21

Fair Debt Collection Practices Act ...................................................................... *passim*

Federal Rule of Civil Procedure 12(b)(6) ............................................................ 1, 2, 4, 5

Illinois Consumer Fraud and Deceptive Business Practices Act ......................... 4, 9, 11

Truth in Lending Act .......................................................................................... *passim*

**Other Authorities**

12 C.F.R. § 1026 app. H-30(B) ................................................................................... 20

12 C.F.R. § 1026.41 ................................................................................... 14, 15, 20, 21

Implementation Guidance for Certain Mortgage Servicing Rules, 2013 WL
    9001249 (C.F.P.B. Oct. 15, 2013) ..................................................... 14, 15, 16, 20

82071201v.5

Defendant Rushmore Loan Management Services LLC ("Rushmore") moves this Court for an order, pursuant to Federal Rule of Civil Procedure 12(b)(6), dismissing the class and individual claims in the complaint ("Complaint') (Dkt. No. 1) filed by Plaintiffs David E. Pagan and Cristina Ortiz ("Plaintiffs"). In support of this motion, Rushmore states as follows:

## INTRODUCTION

Plaintiffs stopped paying their mortgage in 2016. In order to keep Plaintiffs in their home and avoid foreclosure, Rushmore offered—and Plaintiffs accepted—a mortgage loan modification in June 2019. As part of that modification, Plaintiffs expressly agreed that $100 in property inspection fees were properly rolled into the new principal balance and were due and payable.

Plaintiffs have now changed their tune in a transparent attempt to gin-up class action litigation and obtain an undue windfall. Those property inspection fees that they agreed were due and payable a mere six months ago are now allegedly "unauthorized and improper." Plaintiffs' one-eighty cannot and should not be countenanced.

Plaintiffs' claims are barred by well-established principles of estoppel. Plaintiffs cannot obtain the benefits of the loan modification (which allowed them to remedy three years of default, among other things) and then try to repudiate those parts of the modification that they do not like. They also cannot promise Rushmore they are going to pay property inspection fees, use that promise to induce Rushmore to offer them a modification, enter into the modification, and then sue Rushmore regarding those same inspection fees. Further, in agreeing that the property inspection fees were due and payable, Plaintiffs waived their right to subsequently take the position that such fees were "unauthorized and improper." If those fees were due and payable in June 2019, they are due and payable in February 2020. Finally, Plaintiffs have a voluntary payment problem. When they entered into the loan modification, the late fees and other components of their previous delinquent debt were effectively paid off and rolled into a new principal balance. Plaintiffs have

been voluntarily paying that new principal balance ever since. Plaintiffs cannot voluntarily pay an obligation and then sue to recover the sums voluntarily paid. Estoppel, waiver, and the voluntary payment doctrine all mandate dismissal of Plaintiffs' putative class claims with prejudice.

In addition, Plaintiffs bring an individual Fair Debt Collection Practices Act ("FDCPA") claim concerning post-acceleration late fees. This claim is also legally unsustainable. The communications sent by Rushmore identifying the late fees were not sent in connection with the collection of a debt, were not false or misleading, and followed the template mandated by the CFPB. For any or all of those reasons, this Court should also dismiss Plaintiffs' individual FDCPA claim with prejudice.

## ALLEGATIONS IN THE PLEADINGS[1]

On or about November 28, 2012, Plaintiffs entered into a mortgage loan transaction which is evidenced by a mortgage ("Mortgage") encumbering the Plaintiffs' property at 4805 Butler Street, Oswego, Illinois (the "Property"). (A true and correct copy of the Mortgage is attached hereto as **Exhibit 1**.)[2] The Mortgage was recorded with the Kendall County Recorder of Deeds on January 24, 2013 as Document No. 201300001994. (Ex. 1.) The Mortgage is FHA insured and permits the lender to "collect fees and charges authorized by the Secretary [of Housing and Urban Development]" ("HUD"). (Ex. 1 at ¶¶ 2, 8.) Plaintiffs defaulted on their obligations under the

---

[1] Rushmore accepts all well-pled facts in the Complaint as true for purposes of its Rule 12(b)(6) motion only.

[2] The Court may consider the documents attached to this motion because these documents are referenced by the Plaintiffs in the Complaint (Dkt. No. 1 at ¶¶ 16, 25, 37) and are central to their claims. *See Michalowski v. Flagstar Bank, FSB*, 01 C 6095, 2002 WL 113905, at *2 (N.D. Ill. Jan 25, 2002) (citing *Levenstein v. Salafsky*, 164 F.3d 345, 347 (7th Cir. 1998)) ("Additional facts submitted outside of the pleadings will be explicitly excluded and not considered, except those documents that are attached to the motion to dismiss, are referred to in the complaint and are central to the plaintiff's claims.").

Additionally, the Court may take judicial notice of publicly available documents, such as those available through a county's recorder of deeds, without converting a motion to dismiss into one for summary judgment. *Hardaway v. CIT Group/Consumer Fin. Inc.*, 836 F. Supp. 2d 677, 686 (N.D. Ill. 2011).

82071201v.5

mortgage loan agreement in or around 2016 by failing to make the required payments and the lender accelerated the debt. (Dkt. No. 1 at ¶ 16.)

Rushmore acquired the servicing rights to Plaintiffs' Mortgage on or about December 3, 2018. (*Id.* at ¶ 18.) On or about December 11, 2018, Rushmore sent a notice to the Plaintiffs informing them of certain details of their loan, including the total amount of their accelerated debt, broken down by principal, interest, escrow advances, and other charges (the "Total Debt Notice"). (*Id.* at ¶ 19 and Ex. A.) The Total Debt Notice also informed the Plaintiffs that this amount was "subject to change as a result of interest and other accruing charges (such as Late Charges, Legal Fees and Costs, and Other Charges)." (*Id.*)

Rushmore sent its first monthly mortgage statement to Plaintiffs on or about December 17, 2018 (the "Mortgage Statement") and noted the amount required to reinstate the Mortgage debt post-acceleration. (*Id.* at ¶ 22 and Ex. C.) The Mortgage Statement also, under the reinstatement amount, informed the Plaintiffs that if they did not reinstate the debt by a certain date, an additional late fee would be added to the reinstatement amount. (*Id.*)

On January 10, 2018, Plaintiffs' counsel allegedly sent a letter to Rushmore informing Rushmore that the Plaintiffs occupied the Property. (*Id.* at ¶ 4.) Plaintiffs allege that Rushmore then charged them inspection fees for five property inspections performed in December 2018 and in January, February, March, and April 2019. (*Id.* at ¶ 31.) Rushmore allegedly added these fees to the mortgage loan balance after each inspection and identified the fee in the next monthly mortgage statement. (*Id.* at ¶¶ 33, 35.)

In February 2019, Rushmore offered Plaintiffs a trial period plan ("TPP") which provided that Rushmore would extend an offer of a permanent loan modification if the Plaintiffs made three monthly trial payments prior to May 1, 2019. (*Id.* at ¶ 25.) Plaintiffs completed their obligations

3

under the TPP and executed a loan modification agreement ("Loan Modification") effective June 7, 2019. (A true and correct copy of the Loan Modification is attached hereto as **Exhibit 2**.)[3] The Loan Modification was recorded with the Kendall County Recorder of Deeds on July 23, 2019 as Document No. 201900009829. (Ex. 2.) As part of the Loan Modification, Plaintiffs expressly agreed that $292,047.50 was the new principal balance due and "payable," a sum which included the challenged property inspection fees. (Ex. 2; Dkt. No. 1 at ¶ 36.)

Plaintiffs bring this action alleging putative class claims for violations of the FDCPA (Count I), violations of the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA") (Count II), and breach of contract (Count III) arising from Rushmore's imposition of property inspection fees. (Dkt. No. 1 at ¶¶ 38-68.) Plaintiffs also bring an individual claim for violation of the FDCPA arising from Rushmore's reference to post-acceleration late fees in communications to Plaintiffs (Count IV). (*Id.* at ¶¶ 69-75.)

## LEGAL STANDARD

Under Rule 12(b)(6), the Seventh Circuit imposes two hurdles that a plaintiff must clear in order to survive a motion to dismiss: "[f]irst, the complaint must describe the claim in sufficient detail to give the defendant fair notice of what the…claim is and the grounds upon which it rests;" and "[s]econd, its allegations must plausibly suggest that the plaintiff has a right to relief, raising that possibility above a speculative level; if they do not, the plaintiff pleads itself out of court." *E.E.O.C. v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007) (internal quotation marks omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

---

[3] *See* n.1.

In considering a motion to dismiss, this Court should not "assume that [the plaintiff] can prove facts that it has not alleged or that the defendants have violated the…laws in ways that have not been alleged." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 563 n.8 (2007) (quoting *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983)). Thus, Rule 12(b)(6) requires dismissal of any claim where the underlying allegations are merely "consistent with" liability, "too vague to provide notice to defendants," or "merely a formulaic recitation of the cause of action and nothing more." *Brooks v. Ross*, 578 F.3d 574, 581-82 (7th Cir. 2009); *Iqbal*, 566 U.S. at 678 ("Where a complaint pleads facts that are merely consistent with a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'") (quoting *Twombly*, 550 U.S. at 557).

## ARGUMENT

### I.   Counts I, II, and III are barred by estoppel and waiver; Counts I and II are additionally barred by the voluntary payment doctrine.[4]

The timeline is clearly set forth in Plaintiffs' Complaint: (1) Rushmore conducted property inspections in December 2018, and January, February, March, and April 2019; (2) Rushmore reflected a $20 property inspection fee in the next monthly mortgage statement; (3) Rushmore offered Plaintiffs a Loan Modification that rolled the $100 in property inspection fees into the new principal balance; (4) Plaintiffs accepted the Loan Modification in June 2019 and agreed that the property inspection fees were due and payable; and (5) Plaintiffs have been paying their agreed obligations on the Loan Modification. (Dkt. No. 1 at ¶¶ 31-37.) Having knowingly accepted and

---

[4] Although the arguments raised in this section are more commonly asserted as affirmative defenses, this Court may consider affirmative defenses raised in a motion to dismiss when it is "clear from the face of the complaint, and matters of which the court may take judicial notice, that the plaintiff's claims are barred as a matter of law." *Parungao v. Cmty. Health Sys., Inc.*, 858 F.3d 452, 457 (7th Cir. 2017); *accord NewSpin Sports, LLC v. Arrow Elecs., Inc.*, 910 F.3d 293, 299–300 (7th Cir. 2018) ("[W]hen a plaintiff's complaint nonetheless sets out all of the elements of an affirmative defense, dismissal under Rule 12(b)(6) is appropriate.").

agreed to pay the property inspection fees in exchange for the substantial benefits provided by the Loan Modification—curing their default, avoiding foreclosure, and extending the maturity of their loan—Plaintiffs are precluded from challenging the inspection fees now.

### A. Plaintiffs are estopped from challenging the late fees that they were aware of and agreed to pay as part of the Loan Modification.

Estoppel is an equitable doctrine invoked to avoid injustice in particular cases. *Heckler v. Cmty. Health Services of Crawford County, Inc.*, 467 U.S. 51, 59 (1984). Plaintiffs' claims here are barred by both promissory and equitable estoppel.

The elements of equitable estoppel are:

(1) the other party misrepresented or concealed material facts; (2) the other party knew at the time the representations were made that the representations were untrue; (3) the party claiming estoppel did not know that the representations were untrue when they were made and when they were acted upon; (4) the other party intended or reasonably expected the representations to be acted upon by the party claiming estoppel or by the public generally; (5) the party claiming estoppel reasonably relied upon the representations in good faith to his or her detriment; and (6) the party claiming estoppel has been prejudiced by his or her reliance on the representation.

*In re Scarlett Z.-D.*, 28 N.E.3d 776, 784–85 (Ill. 2015).[5] "The test is whether, considering all the circumstances, conscience and the duty of honest dealing should deny one the right to repudiate the consequences of his or her representations or conduct." *Id*. Under this doctrine, a "party that accepts the benefits of an agreement is estopped from denying its existence or from performing obligations under the agreement." *Grot v. First Bank of Schaumburg*, 684 N.E.2d 1016, 1020 (Ill. App. Ct. 1st Dist. 1997).

---

[5] The elements for federal equitable estoppel are fewer, but they reflect the same requirements as Illinois: "(1) a definite misrepresentation, (2) reasonable reliance, and (3) detriment to the party who acted in reasonable reliance on the misrepresentation." *Freeburg v. Deere & Co.*, No. 411CV04035SLDJEH, 2014 WL 1258029, at *4 (C.D. Ill. Mar. 27, 2014).

Here, Plaintiffs represented to Rushmore that $292,047.50 was payable to Rushmore, a sum which included $100 in previously identified property inspection fees (the "Unpaid Principal Balance").[6] (Ex. 2; Dkt. No. 1 at ¶ 36.) This was an obvious misrepresentation of a material fact— the Complaint now claims those fees were "unauthorized and improper." (*See* Dkt. No. 1 at ¶ 34.)

Plaintiffs also unequivocally knew that their representation was untrue. As the Complaint alleges, before agreeing to the Loan Modification, Plaintiffs sent Rushmore a letter informing Rushmore that they lived in the Property and did not consent to inspections. (*Id*. at ¶ 24.) They made the misrepresentation fully aware it was necessary to induce Rushmore to enter into the Loan Modification.

Rushmore, on the other hand, had no reason to know that Plaintiffs were holding this claim in their back pocket to use after they received the benefits of the Loan Modification. It reasonably relied on Plaintiffs' agreement that the late fees were due and payable, entered into the Loan Modification, and is now suffering prejudice as a result, having given Plaintiffs the substantial benefits of the Loan Modification and also needing to defend a putative class action. Had Rushmore known that Plaintiffs disagreed with the validity of the inspection fees, it could have taken steps to remove them from the amount payable or it would have declined to enter into the Loan Modification.

In addition to equitable estoppel, promissory estoppel bars Plaintiffs' putative class claims. "The core elements of federal promissory estoppel are (a) a promise by the opposing party, (b) reliance on the promise by the proponent of estoppel, (c) the proponent's reliance was reasonable, and (d) the reliance caused a detriment to the proponent." *Molina v. First Line Sols. LLC*, 566 F.

---

[6] The "Unpaid Principal Balance" is defined in the Loan Modification as "the amount payable under the Note and [Mortgage] … consisting of the amount(s) loaned to [Plaintiffs] by [Rushmore] plus capitalized interest … and other amounts capitalized, which is limited to escrows and any legal fees and related foreclosure costs that may have been accrued for work completed." (Ex. 2.)

Supp. 2d 770, 781 (N.D. Ill. 2007). Under Illinois law, the promise must be unambiguous and the proponent's reliance must be expected and foreseeable by the opposing party. *Id.*

Here, the Loan Modification contained an unambiguous promise from the Plaintiffs to pay back the Unpaid Principal Balance which included the property inspection fees of which they now complain. (Ex. 2; Dkt. No. 1 at ¶ 36.) Plaintiffs undoubtedly expected and foresaw that Rushmore would rely on this promise as an inducement to agree to the Loan Modification. Rushmore also reasonably relied on the promise when it entered into the Loan Modification. Finally, this reliance was detrimental to Rushmore: had Rushmore known that Plaintiff would turn around and contest the inspection fees in a putative class action federal lawsuit, it would have either removed the $100 in property inspection fees (which amounts to .034% of the Unpaid Principal Balance) or not entered into the Loan Modification at all.

The bottom line is that Plaintiffs obtained a significant benefit from this Loan Modification: they were able to stave off a foreclosure and keep their home while extending the maturity date on their loan. In order to obtain this benefit, they represented and promised to Rushmore that the property inspection fees were due and owing. It is inequitable for Plaintiffs to receive and keep the significant benefits they received with the Loan Modification while also challenging the parts they do not like. *Grot*, 684 N.E.2d at 1020. This Court should dismiss with prejudice Counts I, II, and III on the basis of estoppel.

**B.      Plaintiffs waived their claims under Counts I through III.**

"'Waiver' is the voluntary relinquishment of a known right." *Anderson v. Holy See*, 878 F. Supp. 2d 923, 933 (N.D. Ill. 2012) (citing *People v. Blair*, 831 N.E.2d 604, 615 n. 2 (Ill. 2005)). "It may be manifested expressly or by conduct inconsistent with an intent to enforce that right," meaning by actions, words, or conduct on the part of the person waiving the right. *Id.* "An implied waiver arises when conduct of the person against whom waiver is asserted is inconsistent with any

8

intention other than to waive it." *Home Ins. Co. v. Cincinnati Ins. Co.*, 821 N.E.2d 269, 282 (Ill. 2004); *see also Takiff Properties Group Ltd. #2 v. GTI Life, Inc.*, 124 N.E.3d 11, 18 (Ill. App. Ct. 1st Dist. 2018) ("Furthermore, courts may find implied waiver of a legal right where the party against whom waiver is being asserted takes actions that are inconsistent with anything other than an intention to waive that legal right.").

This is a textbook example of waiver. Prior to executing the Loan Modification, Plaintiffs were aware of the property inspection fees (Dkt. No. 1 at ¶ 33) and also believed those property inspection fees were "unauthorized and improper" (*Id.* at ¶¶ 24, 34). In executing the Loan Modification and agreeing that those property inspection fees were due and payable, Plaintiffs took an inconsistent position. The property inspection fees cannot be both "unauthorized and improper" and "payable." By agreeing that the property inspection fees were payable, Plaintiffs voluntary relinquished their right to subsequently claim that those fees were "unauthorized and improper." Plaintiffs thus waived their legal right to assert these claims and this Court should dismiss Counts I through III with prejudice.

### C.    Counts II and III are barred by the voluntary payment doctrine.

"Absent fraud, coercion or mistake of fact, monies paid under a claim of right to payment but under a mistake of law are not recoverable." *Smith v. Prime Cable of Chicago*, 276 Ill. App. 3d 843, 847, 658 N.E.2d 1325, 1329 (1st Dist. 1995). "To avoid application of the doctrine, a plaintiff must allege facts that bring the claim within one of the recognized exceptions such as necessity or compulsion, fraud, or misrepresentation or mistake of fact." *McIntosh v. Walgreens Boots All., Inc.*, 2019 IL 123626, ¶ 34, 135 N.E.3d 73, 83. The doctrine applies to claims for breach of contract as well as ICFA. *See Randazzo v. Harris Bank Palatine, N.A.*, 262 F.3d 663, 668 (7th Cir. 2001) (voluntary payment doctrine barred breach of contract claim); *McIntosh*, 135 N.E.3d at 84 (ICFA claim barred by voluntary payment doctrine).

9

By executing the Loan Modification that rolled the property inspection fees into the Unpaid Principal Balance, Plaintiffs have already paid those fees and done so voluntarily. The old debt, which included principal, interest, late fees, and other costs, was effectively paid as part of the Loan Modification, leaving a new debt in the amount of $292,047.50. (Ex. 2.) Moreover, Plaintiffs have been voluntarily paying that new debt as well. (Dkt. No. 1 at ¶ 36.)

Perhaps sensing that the voluntary payment doctrine bars their claims, Plaintiffs claim that they only "agreed to the loan modification because they feared losing their home, and they were concerned about the fees that were being added to their balance every month." (Dkt. No. 1 at ¶ 37.) The voluntary payment doctrine does not apply where the payment was made as a result of duress.[7] *Smith*, 658 N.E.2d at 1330. However, even if Plaintiffs' allegation is true, potential legal actions (including foreclosures) fail to rise to the level of duress as a matter of law. *See Stone's Beauty Shops v. Morrison Serv. Ass'n*, 1 N.E.2d 816, 818 (Ill. App. Ct. 1st Dist. 1936) ("Courts of review in passing upon the question of a threat to foreclose a trust deed in which the party has a legal right to foreclose have held that this does not constitute duress as to the execution of another note and trust deed to prevent foreclosure."); *see also Smith*, 658 N.E.2d at 1332 ("Ordinarily, payment made pursuant to threat of litigation or to prevent the bringing of a legal action is regarded as voluntary for the reason that an ample remedy by way of defense to the suit would exist and because no loss could occur until the lawsuit was instituted and proceeded to judgment."); *Lackey v. First Nat. Bank of Oblong*, 32 N.E.2d 949, 954 (Ill. App. Ct. 4th Dist. 1941) ("It may be assumed that during the negotiations the defendant bank threatened to enforce its rights under the notes unless the debt was settled or paid. Such fact in itself will not constitute duress."); *Helmick v. Carter*, 171 Ill. App. 25, 30 (3d Dist. 1912) ("Plaintiff does not in his declaration set forth any acts

---

[7] The voluntary payment doctrine also does not apply to payments obtained by fraud or mistake of fact, *Smith*, 658 N.E.2d at 1330, but Plaintiffs do not allege either of those exceptions here.

done by defendant or any threats made by him aside from the threat that foreclosure proceedings would be immediately commenced unless payment was made, and these do not constitute fraud and deceit or duress.").

Plaintiffs voluntarily financed the payment of the property inspection fees in order to receive the benefits of the Loan Modification. Their voluntary payment precludes them from pursuing their ICFA and breach of contract claims and this Court should accordingly dismiss Counts II and III with prejudice.

II. **Both of Plaintiffs' FDCPA claims (Counts I and IV) should be dismissed because the Total Debt Notice and monthly mortgage statements are informational and the CFPB exempts debt collectors from FDCPA liability arising from monthly mortgage statements.**

Count IV alleges that Rushmore violated § 1692e[8] of the FDCPA by indicating in the Total Debt Notice and the Mortgage Statement that it would impose late fees for post-acceleration missed monthly payments. (Dkt. No. 1 at ¶ 69-75.) Count I also alleges that Rushmore violated § 1692e because it misrepresented "that it had the right to collect a balance that included unauthorized property inspection fees" in the subsequent monthly mortgage statements. (*Id.* at ¶¶ 33, 39.) To be liable under § 1692e, Rushmore's communications must have been sent "in connection with the collection of any debt." 15 U.S.C. § 1692e. Neither the Total Debt Notice nor any of the mortgage statements were sent "in connection with the collection of any debt."

The FDCPA does not define the phrase "in connection with the collection of any debt" but the Seventh Circuit has made clear that not all communications sent to borrowers about a debt are "in connection with the collection of any debt." *See Bailey v. Sec. Nat'l Servicing Corp.*, 154 F.3d

---

[8] Count IV also alleges a violation of § 1692g of the FDCPA, but this section concerns notifying consumers of their rights to dispute and seek validation of their debts in initial communications. There are no allegations anywhere in the Complaint that Rushmore failed to satisfy these requirements. Moreover, as explained further below, the Total Debt Notice complied with the requirements of § 1692g. To the extent the Plaintiffs are actually asserting that Rushmore violated § 1692g, this claim is plainly without merit and must be dismissed with prejudice.

384, 388-89 (7th Cir. 1998). For example, communications that are informational do not trigger liability. *Id*. In considering whether a communication is a debt-collection communication, this Court is required to make a commonsense inquiry into whether the communication demands payment, the nature of the parties' relationship, and the objective purpose and context of the communications. *Gburek v. Litton Loan Servicing LP*, 614 F.3d 380, 385 (7th Cir. 2010); *Saccameno v. Ocwen Loan Servicing, LLC*, 15 C 1164, 2015 WL 7293530, at *5 (N.D. Ill. Nov. 19, 2015).

The context in which Rushmore sent these letters to the Plaintiffs establishes that they were not sent in connection with the collection of a debt. Rushmore did not send these letters to pressure the Plaintiffs to pay the outstanding debt. Rather, Rushmore was ***required*** to send these letters by federal law.

**A.    The Total Debt Notice is required by § 1692g and all the statements it contains are purely informational.**

To begin, § 1692g of the FDCPA requires debt collectors, upon acquiring a debt, to send a written notice with the following information:[9]

(**1**) the amount of the debt;

(**2**) the name of the creditor to whom the debt is owed;

(**3**) a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector;

(**4**) a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector; and

---

[9] This information may be sent in an initial communication or in a written notice sent within five days of the initial communication. 15 U.S.C. § 1692g(a).

**(5)** a statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor.

15 U.S.C. § 1692g(a). The Total Debt Notice includes all of this information. (Dkt. No. 1-2.) Moreover, the Total Debt Notice contains other information for the Plaintiffs, such as how to obtain a payoff statement and a notice that the amount of the debt is subject to change, but nowhere does it make a demand for payment. (*Id.*)

The Total Debt Notice is analogous to the validation letter sent to the debtor in *Whalen v. Specialized Loan Servicing, LLC*, 155 F. Supp. 3d 905 (W.D. Wis. 2016). There, the defendant (also a mortgage servicer) sent the plaintiff a validation notice pursuant to § 1692g which also stated "[p]lease note that the amount of the debt does not include any fees or interest that may accrue after the date of this letter," but did not contain a demand for payment or threat of adverse consequences. *Id.* at 907, 910. The plaintiff alleged that this letter violated § 1692e because it "state[d] that fees or interest may accrue," but the court rejected this argument and ruled that the letter was nothing more than "an account status update" and not sent in connection with the collection of a debt. *Id.* at 910. In other words, informing the plaintiff of the amount owed and the mere fact that fees may be imposed is not sufficient to turn an informational notice into a communication covered by § 1692e. *Id.*; *see also Shelley v. Ocwen Loan Servicing, LLC*, 1:13-CV-506-RLY-DKL, 2013 WL 4584649, at *7 (S.D. Ind. Aug. 28, 2013) ("On its face, [the Letter] is clearly informational—it alerts Plaintiffs that their account has been transferred to Ocwen and provides Ocwen's contact information. The Letter did not demand a specific payment or discuss the delinquency of the underlying debt. Although it does include the principal amount of the loan and notes a prior date for payment due, a reasonable person would not believe the Letter was a debt collection demand when the terms of the payment are not even listed.").

13

The same reasoning applies to the Total Debt Notice here. There is no demand for payment or threat of adverse consequences in the Total Debt Notice and the statements therein are all informational. Plaintiffs' only complaint is the statement regarding late fees, but this, too, is a purely informational statement that informs the Plaintiffs of future possibilities rather than of current obligations. It therefore cannot be said that the Total Debt Notice was sent in connection with the collection of a debt.

> ### B. The CFPB exempts debt collectors from liability where monthly mortgage statements, such as the ones here, are required by—and comply with—TILA.

As for the various monthly mortgage statements complained of by the Plaintiffs (*Id.* at ¶¶ 33, 39, 69-75), these are mandated by the Truth in Lending Act ("TILA") and its implementing regulation, Regulation Z. *See* 12 C.F.R. § 1026.41. Section 1026.41 requires servicers such as Rushmore to send periodic statements for each billing cycle containing information such as the amount due, the payment due date, and the amount of any charges or late payment fee along with the date the fee will be imposed. *Id.* at (a), (d)(1). The monthly mortgage statements here contain all of the information required in § 1026.41.

The CFPB and courts throughout the country have deemed monthly mortgage statements sent in compliance with 12 C.F.R. § 1026.41 to be informational rather than attempts to collect a debt. In implementing Regulation Z, the CFPB recognized that by requiring servicers to send account statements to borrowers, servicers such as Rushmore could potentially run afoul of the FDCPA. Implementation Guidance for Certain Mortgage Servicing Rules, 2013 WL 9001249 (C.F.P.B. Oct. 15, 2013) ("Bulletin 2013-12"). To resolve this potential conflict, the CFPB issued Bulletin 2013-12 which advised "that a servicer acting as a debt collector would not be liable under the FDCPA for complying" with Regulation Z despite a borrower's cease communication request.

14

*Id.* The CFPB based this exemption in part on the fact that periodic account statements "provide useful ***information*** to consumers regardless of their collections status." *Id.* (emphasis added).

Although Bulletin 2013-12 was specifically concerned with the sending of account statements to borrowers who had requested that communications cease, courts have recognized that because the periodic account statements are informational only, no FDCPA liability can attach to the sending of those account statements, cease communication request or not. *See Green v. Specialized Loan Servicing LLC*, 766 F. App'x 777, 784–85 (11th Cir. 2019) (finding statements in TILA-required mortgage statement do not give rise to a FDCPA claim); *Wagoner v. EverHome Mortg. Inc*., No. CV 17-8081 (JLL), 2018 WL 2230553, at *4 (D.N.J. May 16, 2018) ("Defendants cannot be liable for FDCPA violations for sending Plaintiff notices that they were required by law to send."); *Saafir v. Bayview Loan Servicing, LLC*, No. CV 17-3735 (RBK/JS), 2018 WL 1069413 (D.N.J. Feb. 26, 2018), *aff'd*, 751 F. App'x 166 (3d Cir. 2018) ("The FDCPA does not impose liability for compliance with other federal law. In short, the statements do not seek to recover on a debt—they just provide notice—and were also sent pursuant to federal law. As there is no plausible way to amend the pleadings to withstand future dismissal, we dismiss with prejudice.") (citation omitted); *Antoine v. Carrington Mortg. Servs. LLC*, No. 0:17-CV-61216-WPD, 2017 WL 3404389, at *2 (S.D. Fla. Aug. 8, 2017) (dismissing FDCPA claim premised on allegedly deceptive account statements because "the monthly mortgage statement did not constitute 'debt collection' under the FDCPA"); *Brown v. Select Portfolio Servicing, Inc.*, No. 16-62999-CIV, 2017 WL 1157253, at *2 (S.D. Fla. Mar. 24, 2017) ("Defendant is required by federal law, specifically [TILA] Regulation Z to send mortgage statements to plaintiff. Plaintiff cannot state a claim under the FDCPA with respect to monthly mortgage statements sent pursuant to federal law.") (citing 12 C.F.R. § 1026.41); *see also id.* at n. 5 ("If a mortgage servicer is not liable under

15

the FDCPA for sending monthly mortgage statements pursuant to TILA Regulation Z, even after the consumer requested that it cease communications, then there is no basis for imposing FDCPA liability upon a servicer for complying with Regulation Z absent a 'cease communication' notice from the borrower."); *Hill v. DLJ Mortg. Capital, Inc.*, No. 15-CV-3083 (SJF) (AYS), 2016 WL 5818540, at \*9 (E.D.N.Y. Oct. 5, 2016) (dismissing FDCPA claim because the servicer "was merely sending plaintiff the periodic mortgage statements that it was required to send to her under the TILA and its implementing regulations … for informational purposes while the amounts due under the Foreclosure Judgment remained unsatisfied pending the sale of the Property; not in connection with an attempt to collect a debt from plaintiff for purposes of the FDCPA.").[10]

In sum, because both the Total Debt Notice and the monthly mortgage statements are required by other laws and contain purely informational statements, they do not violate the FDCPA. Counts I and IV therefore fail to state a claim upon which relief can be granted. Because this deficiency cannot be cured by amendment, the Court should dismiss these counts with prejudice. *Brunt v. Serv. Employees Int'l Union*, 284 F.3d 715, 720–21 (7th Cir. 2002) (holding that leave to amend a complaint is appropriately denied if the "amended complaint would not survive a motion to dismiss").

---

[10] Admittedly, courts are not unanimous on this issue. *Matmanivong v. National Creditors Connection, Inc.* held that CFPB Bulletin 2013-12 "only exempted mortgage servicers from FDCPA liability when a borrower has instructed the servicer to cease communicating with them." 79 F. Supp. 3d 864, 873 (N.D. Ill. 2015) (internal quotation marks omitted). But that interpretation of CFPB Bulletin 2013-12 creates an anomalous result whereby borrowers who demand that their servicer cease communication are barred from suing about those communications, while borrowers who do not request that their servicer cease communication are not, even if the periodic statements are identical. The more reasonable and equitable interpretation is that because the account statements are informational only, they are not communications sent in connection with the collection of a debt, and are not actionable under the FDCPA, regardless of any cease communication request. *See Hill*, 2016 WL 5818540, at \*9 ("The reasoning behind the CFPB's advisory opinion is equally applicable, even where, as here, there is no indication that a 'cease communication' notice was sent by the consumer in default of her mortgage loan … .").

**III.    Count IV should also be dismissed because the Total Debt Notice and Mortgage Statement are not misleading.**

Plaintiffs have an even more fundamental problem with respect to their late fee claim—even if the Total Debt Notice and the Mortgage Statement are communications sent in connection with the collection of a debt, they still do not give rise to a FDCPA claim because they are not misleading, deceptive, or unfair, and they do not seek to recover amounts not permitted by law or the loan documents.

**A.    Late fees are recoverable upon reinstatement per the terms of Plaintiffs' Mortgage and applicable Seventh Circuit law; Rushmore's communications were therefore not deceptive or misleading**

The crux of Plaintiffs' Count IV FDCPA claim is that "Defendant cannot legally impose late charges for failure to make monthly payments after the loan has been accelerated, and reinstatement had [sic] not been sought … ." (Dkt. No. 1 at ¶ 72.) In support, Plaintiffs rely on *Rizzo v. Pierce & Assocs.*, 351 F.3d 791 (7th Cir. 2003). (*Id.*)

Plaintiffs' reliance on *Rizzo* is odd because *Rizzo* supports Rushmore's position. Rizzo, like Plaintiffs, claimed that late fees are not recoverable for missed post-acceleration monthly payments, and any effort to collect such late fees violates the FDCPA. *Rizzo*, 351 F.3d at 792-94. The Seventh Circuit expressly rejected that argument. *Id.* at 793. Rizzo's mortgage allowed Rizzo to reinstate if he paid the lender "all sums which would be then due under this Mortgage and the Note had no acceleration occurred." *Id*. The Seventh Circuit found that:

> The effect of this, from the plain language of the instrument, is retroactive. In other words, the monthly payments are deemed to have been due each and every month on the dates set out in the mortgage and note. We find this language to unambiguously require plaintiffs to pay the late fees.

*Id.* at 793-94. And because late fees were recoverable after acceleration per the terms of the loan documents, the Seventh Circuit concluded that:

> We cannot find any false or misleading representations nor can we deem the collection of late fees unfair or unconscionable. The terms of the note and mortgage explicitly require payment of all sums which would then be due had no acceleration occurred. We hold that defendants have not violated the FDCPA.

*Id*. at 794.

Although the language is not identical to the reinstatement clause in *Rizzo*, the reinstatement clause in Plaintiffs' Mortgage also permits the recovery of late fees for missed post-acceleration monthly payments:

> **Reinstatement.** Borrower has a right to be reinstated if Lender has required immediate payment in full because of Borrower's failure to pay an amount due under the Note or this Security Instrument. This right applies even after foreclosure proceedings are instituted. To reinstate the Security Instrument, Borrower shall tender in a lump sum ***all amounts required to bring Borrower's account current*** including, to the extent they are obligations of Borrower under this Security Instrument, foreclosure costs and reasonable and customary attorneys' fees and expenses properly associated with the foreclosure proceeding.

(Ex. 1 at p. 4, ¶ 10 (emphasis added)); *see also Rizzo*, 351 F.3d at 793-94. As such, based on *Rizzo* and the language of the subject mortgage, there is no doubt that late fees can be imposed after acceleration under certain circumstances.

The question then becomes whether the Total Debt Notice and Mortgage Statement were false or misled the Plaintiffs regarding the imposition of post-acceleration late fees. "[A] statement isn't 'false' unless it would confuse the unsophisticated consumer." *Wahl v. Midland Credit Mgmt., Inc.*, 556 F.3d 643, 646 (7th Cir. 2009). An unsophisticated consumer has "rudimentary knowledge about the financial world, is wise enough to read collection notices with added care, possesses 'reasonable intelligence,' and is capable of making basic logical deductions and inferences." *Pettit v. Retrieval Masters Creditors Bureau, Inc.*, 211 F.3d 1057, 1060 (7th Cir. 2000). While the determination of whether a statement is misleading to an unsophisticated consumer is usually one of fact, it can be decided as a matter of law if the text of the communication contains nothing deceptive. *Lox v. CDA, Ltd.*, 689 F.3d 818, 822 (7th Cir. 2012) ("[There are]

18

cases in which the allegedly offensive language is plainly and clearly not misleading. In cases of this nature, no extrinsic evidence is needed to show that the reasonable unsophisticated consumer would not be confused by the pertinent language.") (citation omitted); *Taylor v. Cavalry Inv., LLC*, 365 F.3d 572, 574-75 (7th Cir. 2004) ("If it is apparent from a reading of the letter that not even 'a significant fraction of the population' would be misled by it … the court should reject it without requiring evidence beyond the letter itself.").

A significant fraction of the population would not be misled by either Rushmore's Total Debt Notice or Mortgage Statement. The Total Debt Notice clearly indicates that no late charges have been imposed to date. It then makes the unremarkable statement that the total amount of debt may change based on interest and other accruing charges, including late fees. That is demonstrably accurate. If the Plaintiffs reinstated their loan, they would have to pay late fees that accrued, and this would necessarily change the "TOTAL AMOUNT OF YOUR DEBT." Claiming that this demonstrably true statement is misleading is a transparent attempt to create a case where one does not exist.

The Mortgage Statement is similarly accurate and unremarkable. The Mortgage Statement identifies the "Reinstatement Amount Due" and then immediately below that indicates if reinstatement is not made before the next scheduled monthly payment, another late charge will be added to that "Reinstatement Amount Due." That is consistent with *Rizzo* and the terms of the Mortgage. The Mortgage Statement also denotes the "Acceleration Amount" but conspicuously absent is any reference to late fees. The unsophisticated consumer is not a "dimwit" (*Wahl*, 556 F.3d at 645) and would clearly understand that late charges were (legally) accruing on the reinstatement amount, but not the acceleration amount.

19

Neither the Total Debt Notice nor the Mortgage Statement are confusing to the unsophisticated consumer as a matter of law and are thus not actionable under the FDCPA.

**B. Rushmore's Mortgage Statement substantially tracks the CFPB-approved template and is thus not misleading, unfair, or deceptive as a matter of law.**

Rushmore's Mortgage Statement does not violate the FDCPA for another reason: it substantially tracks the template account statement provided by the CFPB. TILA and the CFPB (through Regulation Z) mandate that servicers send borrowers account statements on a monthly basis because the CFPB has determined that monthly account statements "provide useful information to consumers regardless of their collections status." Bulletin 2013-12; *see also* 12 C.F.R. § 1026.41(a)(2). To ensure that servicers comply with TILA's requirements and effectuate the CFPB's desire to provide consumers with valuable and relevant information, the CFPB created a template for account statements to be used by servicers. *See* 12 C.F.R. § 1026 app. H-30(B); *see also* 12 C.F.R. § 1026.41(c) ("Proper use of these forms [provided in appendix H-30] complies with … the layout requirements in paragraph (d) of this section."). The Mortgage Statement sent to Plaintiffs substantially tracks the applicable template account statement created by the CFPB and made available at Appendix H-30(B). (*Compare* Dkt. No. 1 at Ex. C *with* 12 C.F.R. § 1026 app. H-30(B).)

Plaintiffs' suggestion that Rushmore's statements are problematic because they state that late fees will be imposed if the reinstatement amount is not received by a certain date is belied by the CFPB template, as this template has an identical line suggesting that late fees will be imposed for payments received after a certain date. (*See* 12 C.F.R. § 1026 app. H-30(B).) Thus, the Mortgage Statement's communication to the Plaintiffs regarding late fees was in substantial compliance with CFPB regulation 12 C.F.R. § 1026.41.

82071201v.5

As a result of this substantial compliance with a CFPB regulation, Rushmore is exempted from liability arising out of the Mortgage Statement. A servicer cannot be liable under the FDCPA for complying with other federal laws or the advisory opinions of the CFPB. *See* 15 U.S.C. § 1692k(e) ("No provision of this section imposing any liability shall apply to any act done or omitted in good faith in conformity with any advisory opinion of the [CFPB], notwithstanding that after such act or omission has occurred, such opinion is amended, rescinded, or determined by judicial or other authority to be invalid for any reason."); *Oberg v. Blatt*, No. 14 C 7369, 2015 WL 9478213, at *3 (N.D. Ill. Dec. 29, 2015) ("[Section 1692k(e)] provides that a debt collector that acts in reliance on a CFPB advisory opinion cannot be held liable … ."); *Saafir*, 2018 WL 1069413, at *3 ("The FDCPA does not impose liability for compliance with other federal law."). Rushmore is thus protected from liability by § 1692k(e) as a matter of law.

The protection offered by 15 U.S.C. § 1692k(e) is reasonable, especially in circumstances like this. TILA and the CFPB (through Regulation Z) mandate that Rushmore send periodic account statements to Plaintiffs. The CFPB further provides a template to insure that Rushmore provides Plaintiffs with the appropriate information. Given this explicit direction, this Court should not fault Rushmore (let alone hold it liable) for providing Plaintiffs with the information required by the CFPB in the form created by the CFPB.

In fact, it is not difficult to imagine what would result if Rushmore materially deviated from the template provided by the CFPB, for instance, by not including information regarding late fees. A plaintiff, maybe even these particular Plaintiffs, would file an FDCPA or TILA suit against Rushmore based on the fact that Rushmore failed to send account statements that materially comply with 12 C.F.R. § 1026.41. That plaintiff would point to the CFPB's template and argue that Rushmore cannot follow the explicit directions provided by the CFPB.

The creation of this type of Catch-22—where servicers face potential liability for either complying with the CFPB's regulations or for not complying with the CFPB's regulations—was not the intent of Congress in passing the FDCPA. Judge Ellis recently and persuasively made that point in dismissing an FDCPA action, holding:

> To find otherwise places debt collectors between a rock and a hard place, where they cannot simply list the amount owed, for fear of being misleading, but likewise, cannot breakdown the amount into categories either, for fear of being misleading. Debt collectors would be damned if they do and damned if they don't. This is clearly not what Congress intended the FDCPA to do—essentially turn debt collectors into a modern-day version of Goldie Locks, who cast about searching for the letter that is just right, not listing too little information or too much. Indeed, [defendant] has done precisely what the Seventh Circuit recommends by clearly itemizing the various components of the debt.

*See Delgado v. Client Services, Inc.*, 17 C 4364, 2018 WL 1193741, at *3 (N.D. Ill. Mar. 7, 2018). Here, Plaintiffs are complaining that Rushmore's account statements contain too much information in the form of post-acceleration late fees. But Rushmore "has done precisely what the [CFPB] recommends" in issuing account statements that substantially track the CFPB's template. *See id.* It should not be liable for that, and this Court should dismiss Count IV with prejudice.

## CONCLUSION

For the foregoing reasons, this Court should enter an order dismissing the Plaintiff's Complaint with prejudice and for such other and further relief as the Court deems just and necessary.

82071201v.5

DATED:  February 3, 2020                    RUSHMORE LOAN MANAGEMENT
                                            SERVICES LLC,

                                            By:_____/s/ Michael P. McGivney_____
                                                   One of its attorneys

Ryan M. Holz (6294328)
rholz@lockelord.com
Michael P. McGivney (6324324)
michael.mcgivney@lockelord.com
LOCKE LORD LLP
111 South Wacker Drive
Chicago, Illinois  60606
Telephone: 312.443.0700

## CERTIFICATE OF SERVICE

I, Michael P. McGivney, an attorney, certify that I caused the foregoing to be served upon all persons and entities authorized and registered to receive such service through the Court's Case Management/Electronic Case Files (CM/ECF) system on February 3, 2020.

                                            _____/s/Michael P. McGivney_____

23