**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

DAVID E. PAGAN and )
CRISTINA ORTIZ, )
)
Plaintiffs, )
) Case No.: 1:19-cv-07935
vs. ) Honorable Andrea R. Wood
)
RUSHMORE LOAN )
MANAGEMENT SERVICES LLC, )
)
Defendant. )

**PLAINTIFFS' MEMORANDUM IN OPPOSITION TO**
**DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' COMPLAINT**

Daniel A. Edelman
Tara L. Goodwin
Daniel S. Miller
**EDELMAN, COMBS, LATTURNER**
**& GOODWIN, LLC**
20 S. Clark Street, Suite1500
Chicago, Illinois 60603
(312) 739-4200
(312) 419-0379 (FAX)
courtecl@edcombs.com

## **TABLE OF CONTENTS**

I.   STATEMENT OF FACTS ........................................................................................... 1

II.  COUNTS I, II, AND III ARE NOT BARRED BY ESTOPPEL, WAIVER,
     OR THE VOLUNTARY PAYMENT DOCTRINE ..................................................... 2

     A. Rushmore's Property Inspection Fees Are Illegal ........................................... 2

     B. Plaintiffs Are Not Estopped from Alleging Counts I, II, and III ................... 4

     C. Plaintiffs Did Not Waive their Right to Allege Counts I, II, and III ............ 5

     D. The Voluntary Payment Doctrine Cannot be Used to Dismiss Counts I, II, and III .... 6

III. THE NOTICE OF DEBT AND THE MORTGAGE STATEMENT SUBJECT
     RUSHMORE TO FDCPA LIABILITY ..................................................................... 9

     A. Notice of Debt ................................................................................................ 9

     B. Mortgage Statement ..................................................................................... 12

        1. Content of Statements .............................................................................. 12

        2. Implied Repeal by Truth in Lending Act ................................................. 11

        3. CFPB Bulletin 2013-12 ............................................................................ 15

        4. Rushmore's Mortgage Statements Violate the FDCPA ............................ 17

        5. The Cases Cited by Rushmore Are Not on Point ...................................... 18

IV.  THE NOTICE OF DEBT AND MORTGAGE STATEMENT
     ARE MISLEADING ................................................................................................. 17

     A. Plaintiffs' Mortgage Does Not Authorize Charging Late Fees
        Upon Reinstatement ...................................................................................... 17

     B. Rushmore's Mortgage Statement Does Not Track the
        CFPB-Approved Template .............................................................................. 23

V.   CONCLUSION ........................................................................................................ 22

**<u>TABLE OF AUTHORITIES</u>**

**Cases**

*Abby v. Paige,*
   10cv23589, 2013 WL 141145 (S.D.Fla., January 11, 2013)....................................... 7

*Allen v. LaSalle Bank,*
   629 F.3d 364 (3d Cir. 2011) ................................................................................ 6, 7

*Antoine v. Carrington Mortg. Servs. LLC,*
   17cv61216, 2017 WL 3404389 (S.D. Fla. Aug. 8, 2017) ...................................... 16

*Bailey v. Sec. Nat'l Servicing Corp.,*
   154 F.3d 384 (7th Cir. 1998) ................................................................................. 11

*Bartlett v. Heibl,*
   128 F.3d 497 (7th Cir. 1997) ................................................................................. 20

*Boucher v. Finance System of Green Bay, Inc.,*
   880 F.3d 362 (7th Cir. 2018) ............................................................................ 19, 21

*Brown v. Select Portfolio Servicing, Inc.,*
   16cv62999, 2017 WL 1157253 (S.D. Fla. Mar. 24, 2017) ..................................... 16

*Bryson v. News Am. Publications, Inc.,*
   174 Ill. 2d 77, 672 N.E.2d 1207  (1996) ................................................................. 8

*Cappetta v. GC Services LP,*
   654 F.Supp.2d 453 (E.D.Va. 2009)..................................................................... 6, 7

*Clark v. Capital Credit & Collection Servs.,*
   460 F.3d 1162, fn. 5 (9th Cir. 2006) ...................................................................... 5

*Folkerts v. Seterus, Inc.,*
   17cv4171, 2019 WL 1227790 (N.D. Ill. Mar. 15, 2019) .................................. 11, 15

*Foster v. Green Tree Servicing, LLC,*
   8:15cv1878, 2017 WL 5151354 (M.D. Fla. Nov. 3, 2017)................................ 14, 15

*Franze v. Bimbo Foods Bakeries Distribution, LLC,*
   7:17cv03556, 2019 WL 1244293 (S.D.N.Y. Mar. 15, 2019)................................... 7

*Gburek v. Litton Loan Servicing LP,*
   614 F.3d 380 (7th Cir. 2010) ................................................................................. 10

*Geary v. Dominick's Finer Foods, Inc.,*
   129 Ill.2d 389,  544 N.E.2d 344 (1989) .............................................................. 7, 8

*Getto v. City of Chicago,*
   86 Ill. 2d 39, 426 N.E.2d 844 (1981) ...................................................................... 7

*Gonzalez v. Codilis & Assocs., P.C.,*
   03cv2883, 2004 WL 719264 (N.D.Ill., March 30, 2004) ........................................ 6

*Green v. Specialized Loan Servicing LLC,*
   766 Fed.Appx. 777 (11th Cir. 2019) ..................................................................... 15

*Hamid v. Stock & Grimes, LLP,*
   876 F.Supp.2d 500 (E.D.Pa. 2012) ..................................................................... 6, 7

*Harper v. American Tel. & Tel. Co.,*
   54 F.Supp.2d 1371 (S.D.Ga. 1999) ........................................................................ 6

*Hart v. FCI Lender Servs., Inc.*,
  797 F.3d 219 (2d Cir. 2015) .............................................................. 9, 11, 12
*Helmick v. Carter*,
  171 Ill. App. 25 (3d Dist. 1912) ................................................................ 8
*Hill v. DLJ Mortg. Capital, Inc.*,
  15cv3083, 2016 WL 5818540 (E.D.N.Y. Oct. 5, 2016) ........................ 16
*Hill v. Wells Fargo Bank, N.A.*,
  No. 12 C 7240, 2015 WL 232127 (N.D. Ill. Jan. 16, 2015) ..................... 3
*Home Loan Investment Bank, FSB, v. Goodness and Mercy, Inc.*,
  10cv4677 , 2012 WL 1078886 (E.D. N.Y. Mar. 30, 2012) ..................... 18
*Howlett v. Rose*,
  496 U.S. 356 (1990) .................................................................................. 7
Implementation Guidance for Certain Mortgage Servicing Rules,
  2013 WL 9001249 (CFPB Oct. 15, 2013) ............................................. 13
*In re Ruiz,*
  501 B.R. 76 (E.D. Pa. 2013)...................................................................... 3
*Independent Trust Corp. v. Stewart Information Services Corp.*,
  665 F.3d 930  (7th Cir. 2012)............................................................ 4, 6, 7
*Jackson v. Carrington Mortg. Servs.*,
  17cv60516, 2017 WL 5513704 (S.D.Fla. Nov. 16, 2017) ............ 15, 18, 19
*Janetos v. Fulton Friedman & Gullace, LLP*,
  825 F.3d 317 (7th Cir. 2016)................................................................ 9, 20
*Lackey v. First Nat. Bank of Oblong*,
  309 Ill.App. 308, 32 N.E.2d 949 (4th Dist. 1941)..................................... 8
*Lee v. Allstate Life Ins. Co.*,
  361 Ill. App. 3d 970, 838 N.E.2d 15 (2d Dist. 2005)............................... 8
*Marshall-Mosby v. Corporate Receivables, Inc.*,
  205 F.3d 323  (7th Cir. 2000).................................................................. 20
*Matmanivong v Nat'l Creditors Connection, Inc.*,
  79 F.Supp.3d 864 (N.D. Ill. Feb. 9, 2015) ................................. 12, 15, 16
*Midwest Med. Records Ass'n, Inc. v. Brown*,
  2018 IL App (1st) 163230, 97 N.E.3d 125................................................ 8
*Pantoja v. Portfolio Recovery Associates. LLC*,
  852 F.3d 679 (7th Cir. 2017).............................................................. 19, 20
*Randolph v. IMBS, Inc.*,
  368 F.3d 726 (7th Cir. 2004).............................................................. 12, 16
*Riggs-Degraftenreed v. Wells Fargo Home Mortgage, Inc.*,
  4:13cv669, 2016 WL 393868 (E.D. Ark. Jan 29, 2016) ........................... 3
*Rizzo v. Pierce & Assocs.*,
  351 F.3d 791 (7th Cir. 2003)............................................................ 17, 18, 19
*Rodriguez v. Codilis,*
  *& Assoc.*, 17cv03656, 2018 WL 1565596 (N.D. Ill. Mar. 30, 2018)....................... 18
*Ross v. City of Geneva*,
  71 Ill.2d 27, 373 N.E.2d 1342 (1978) ...................................................... 7

-iii-

*Ruth v. Triumph Partnerships*,
    577 F.3d 790 (7th Cir. 2009) .......................................................................... 10, 11
*Saafir v. Bayview Loan Servicing, LLC*,
    17cv3735, 2018 WL 1069413 (D.N.J. Feb. 26, 2018) ................................... 16
*Scott v. Fairbanks Capital Corp.*,
    284 F.Supp.2d 880 (S.D.Ohio  2003) ............................................................. 6
*Security Mut. Life Ins. Co. of New York v. Contemporary Real Estate Assoc.*,
    979 F.2d 329 (3rd Cir. 1992) .......................................................................... 18
*Shields v. Lefta, Inc.*,
    888 F. Supp. 894 (N.D. Ill. 1995) ................................................................. 20, 21
*Stone's Beauty Shops v. Morrison Serv. Ass'n*,
    285 Ill.App. 163, 1 N.E.2d 816 (1st Dist. 1936) ........................................... 8
*Village of Bloomingdale v. CDG Enterprises, Inc.*,
    196 Ill.2d 484, 752 N.E.2d 1090 (2001) ....................................................... 5
*Wagoner v. EverHome Mortg. Inc.*,
    17cv8081, 2018 WL 2230553 (D.N.J. May 16, 2018) ................................... 16
*Wahl v. Midland Credit Mgmt., Inc.*,
    556 F.3d 643 (7th Cir. 2009) .......................................................................... 20
*Wells Fargo Bank Minn. N.A. v. Guarnieri*,
    308 B.R. 122 (D. Conn. 2004) ....................................................................... 15, 18
*Whalen v. Specialized Loan Servicing, LLC*,
    155 F.Supp.3d 905 (W.D.Wis., 2016) ........................................................ 9, 10, 21
*World-Link, Inc. v. Mezun.com, Inc.*,
    14 Misc. 3d 745, 827 N.Y.S.2d 642 (Sup. Ct. 2006) ................................... 4, 8

## Statutes

12 U.S.C. §2605(e)(2) ....................................................................................... 4
15 U.S.C. §1692c(a)(2) ...................................................................................... 14
15 U.S.C. §1692c(c) ........................................................................................... 13, 14
15 U.S.C. §1692e ................................................................................... 14, 16, 20, 21
15 U.S.C. §1692f ................................................................................................ 14
15 U.S.C. §1692g ............................................................................................... 9
15 U.S.C. §1692g(a) .......................................................................................... 9
15 U.S.C. §1692g(e) .......................................................................................... 12
15 U.S.C. §1692k(e) .......................................................................................... 21
15 U.S.C. §6801 ................................................................................................. 12
815 ILCS 505/10c ............................................................................................... 5

## Regulations

12 C.F.R. §1024.35 ............................................................................................ 13, 14
12 C.F.R. §1024.35(g)(iii) .................................................................................. 4
12 C.F.R. §1024.36 ............................................................................................ 13

12 C.F.R. §1024.37 ............................................................................................................ 13

12 C.F.R. §1024.41 ............................................................................................................ 13

12 C.F.R. §1026.20(d) ....................................................................................................... 13

12 C.F.R. §1026.41 ..................................................................................................... 13, 21

12 C.F.R. §1026.41(c) ....................................................................................................... 21

12 C.F.R. §1026.41(d) ....................................................................................................... 21

12 C.F.R. part 1026 App. H .............................................................................................. 20

24 C.F.R. § 203.377 ............................................................................................................. 3

## Other Authorities

*HUD Handbook 4330.1 Ch. 9—9(A)(c)(2)(d); Mortgagee Letter 81-26*
  1981 WL 389744 at *1 (June 16, 1981) .......................................................................... 3

## I.     STATEMENT OF FACTS

Rushmore Loan Management Services, LLC ("Rushmore") has been attempting to collect from Plaintiffs a delinquent residential FHA mortgage loan incurred for personal, family or household purposes. (Cmplt., ¶¶15, 26)  Plaintiffs' loan has been in default and accelerated since 2016. (Cmplt., ¶16)  Servicing of Plaintiffs' loan was transferred to Rushmore effective December 3, 2018. (Cmplt., ¶18; App. A to Cmplt.)  On December 11, 2018, Rushmore sent Plaintiffs, through counsel, a "notice of debt" (Cmplt., ¶19; App. B to Cmplt.)  The "notice of debt" stated that the total amount of the debt might increase due to "late charges." (Cmplt., ¶20)  No late charges could be assessed because the loan had been accelerated. (Cmplt., ¶21)  On December 17, 2018, Rushmore sent Plaintiffs, through counsel, a statement containing an "acceleration amount" and also stating that a late fee will be charged if payment is not received by a specified date. (Cmplt., ¶22, App. C)

On January 10, 2018, counsel for Plaintiffs sent Rushmore a letter stating that Plaintiffs reside in the property and did not consent to Rushmore's agents entering the property. (Cmplt., ¶24)  The letter also inquired about a loan modification application that had been submitted by Plaintiffs prior to the servicing transfer. (Cmplt., ¶24)  On February 8, 2019, Rushmore offered Plaintiffs a trial loan modification. (Cmplt., ¶25)

Plaintiffs have continually occupied and maintained the mortgaged property. (Cmplt., ¶30)  Notwithstanding Rushmore's knowledge of Plaintiffs' occupancy of the property, Rushmore charged Plaintiffs $20 property inspection fees for inspections on: December 27, 2018, January 25, 2019, February 28, 2019, March 28, 2019 and April 25, 2019. (Cmplt., ¶31)  Each inspection confirmed that Plaintiffs occupied the property, and found the property to be in satisfactory condition. (Cmplt., ¶32)  Rushmore included the charges on the monthly mortgage statements it issued. (Cmplt., ¶33)  Such fees were unauthorized and improper. (Cmplt., ¶34)  The fees were added to Plaintiffs' outstanding mortgage balance every month as they were incurred, and increased the past due amount, which made it harder for Plaintiffs to rehabilitate the loan, and which increased the amount needed to pay off the loan. (Cmplt., ¶35)  The fees

were included in the principal balance in Plaintiffs' permanent loan modification, which they are

now obligated to pay, and which they have been paying since it was granted in June 2019.

(Cmplt., ¶36)  Plaintiffs agreed to the loan modification because they feared losing their home,

and they were concerned about the fees that were being added to their balance every month.

(Cmplt., ¶37)

## II. COUNTS I, II, AND III ARE NOT BARRED BY ESTOPPEL, WAIVER, OR THE VOLUNTARY PAYMENT DOCTRINE

Rushmore argues that Counts I, II, and III are barred by estoppel, waiver, and the

voluntary payment doctrine because Plaintiffs were aware of the unlawful property inspection

fees prior to executing the loan modification and agreed to pay the unpaid principal balance in

the loan modification, which included the fees.  However, Rushmore is barred from asserting

these affirmative defenses in its motion to dismiss.

### A. Rushmore's Property Inspection Fees Are Illegal

As a preliminary matter, Plaintiffs' mortgage agreement does not authorize Rushmore to

charge Plaintiffs property inspection fees.  The sections that most closely relate to property

inspections are §§5, 7 and 8:

> **5. Occupancy, Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds**. … Lender may inspect the Property if the Property is vacant or abandoned or the loan is in default. Lender may take reasonable action to protect and preserve such vacant or abandoned Property.
>
> **7. Charges to Borrower and Protection of Lender's Rights in the Property.** … If Borrower fails to make these payments or the payments required by paragraph 2, or fails to perform any other covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, for condemnation or to enforce laws or regulations), *then Lender may do and pay whatever is necessary* to protect the value of the Property and Lender's rights in the Property, including payment of taxes, hazard insurance and other items mentioned in paragraph 2. Any *amounts disbursed by Lender* under this paragraph shall become an additional debt of Borrower and be secured by this Security Instrument. These amounts shall bear interest from the date of disbursement, at the Note rate, and at the option of Lender, shall be immediately due and payable.
>
> **8. Fees.** Lender may collect fees and charges authorized by the Secretary.  (Italics added)
>
> (Ex. 1 to Def. Mot. to Dismiss)

However, these sections do not authorize Rushmore to repeatedly charge Plaintiffs these

-2-

fees when Rushmore knew the property was occupied and not neglected. §5 allows Rushmore to inspect the property in the case of default, but it only permits "reasonable action" when the property is vacant or abandoned; nothing is authorized when the property is occupied. Furthermore, §7 does not expressly state that inspection fees can be charged or become additional debt. Thus, Rushmore cannot rely on contract law to collect property inspection fees.

Furthermore, §8 of the mortgage agreement clearly prohibits Rushmore from charging Plaintiffs for inspection fees. An FHA regulation, 24 C.F.R. § 203.377, provides:

> The mortgagee, *upon learning that a property subject to a mortgage insured under this part is vacant or abandoned*, shall be responsible for the inspection of such property at least monthly, if the loan thereon is in default. When a mortgage is in default and a payment thereon is not received within 45 days of the due date, and efforts to reach the mortgagor by telephone within that period have been unsuccessful, the mortgagee shall be responsible for a visual inspection of the security property to determine whether the property is vacant. The mortgagee shall take reasonable action to protect and preserve such security property when it is determined or should have been determined to be vacant or abandoned until its conveyance to the Secretary, if such action does not constitute an illegal trespass... (Emphasis added)

The Department of Housing and Urban Development ("HUD") interprets 24 C.F.R. § 203.377 to mean that once a property has been found to be occupied, no further inspections may be charged. *HUD Handbook 4330.1* Ch. 9—9(A)(c)(2)(d); *Mortgagee Letter 81-26* 1981 WL 389744 at *1 (June 16, 1981). Furthermore, the court in *Hill v. Wells Fargo Bank, N.A.*, No. 12 C 7240, 2015 WL 232127 (N.D. Ill. Jan. 16, 2015) held that 24 C.F.R. § 203.377 does not permit property inspection fees to be charged after the lender knows the property is occupied: "although the regulation required LPS to protect and preserve the Hills' property once it is deemed vacant or abandoned, the regulation cannot justify LPS's attempts to protect and preserve the Hills' property while it is still occupied." *Id.* at *5 Moreover, because Plaintiffs have an FHA mortgage, FHA regulations are incorporated into the note and mortgage agreement and are binding on mortgagor and mortgagee. *In re Ruiz,* 501 B.R. 76, 79 (E.D. Pa. 2013); *Riggs-Degraftenreed v. Wells Fargo Home Mortgage, Inc.,* 4:13cv669, 2016 WL 393868 (E.D. Ark. Jan 29, 2016). Thus, §8 of the Mortgage Agreement precludes Rushmore from collecting inspection fees, because such fees are not authorized by the Secretary of Housing and Urban

-3-

Development ("HUD").

**B.      Plaintiffs Are Not Estopped from Alleging Counts I, II, and III**

Rushmore contends that it relied upon Plaintiffs' agreement in the loan modification to pay the unpaid principal balance, which included unauthorized property inspection fees. However, estoppel, waiver, and voluntary payment are affirmative defenses that need not be avoided preemptively in the complaint.  "[A] plaintiff is not required to plead facts in the complaint to anticipate and defeat affirmative defenses." *Independent Trust Corp. v. Stewart Information Services Corp.*, 665 F.3d 930, 935  (7th Cir. 2012).  Dismissal on the basis of an affirmative defense is appropriate only in the rare case where a plaintiff's complaint conclusively admits all of the elements of an affirmative defense. *Id.*  The complaint does not allege that Rushmore "relied" on any representations or acts by its borrowers concerning the propriety of the property inspection fees, nor is it apparent how a lender, who is required to be familiar with and comply with FHA regulations, could rely on anything a borrower said or did on that score.

Furthermore, Federal law provides that mortgage servicers such as Rushmore must answer inquiries concerning their servicing of a loan for up to one year after they cease servicing, and make any necessary adjustments.  The Real Estate Settlement Procedures Act, 12 U.S.C. §2605(e)(2) ("RESPA") requires that:

> Not later than 30 days (excluding legal public holidays, Saturdays, and Sundays) after the receipt from any borrower of any qualified written request under paragraph (1) and, if applicable, before taking any action with respect to the inquiry of the borrower, the servicer shall– (A) make appropriate corrections in the account of the borrower, including the crediting of any late charges or penalties, and transmit to the borrower a written notification of such correction (which shall include the name and telephone number of a representative of the servicer who can provide assistance to the borrower)...

Implementing Regulation X, 12 C.F.R. §1024.35(g)(iii) provides that this duty continues until one year after the servicer no longer services the loan, which necessarily means that there is a duty to make adjustments of amounts already paid by the borrower.

State law relating to estoppel, waiver, or voluntary payment is preempted where federal law  – here RESPA  – expressly provides that an account is subject to adjustment after payment. In *World-Link, Inc. v. Mezun.com, Inc.*, 14 Misc. 3d 745, 827 N.Y.S.2d 642, 649-52 (Sup. Ct.

-4-

2006), the court held that because the Communications Act provides that charges may not deviate from a carrier's tariff, state law relating to voluntary payment, waiver and estoppel cannot be used to block a claim for recovery of undercharges or overcharges – even one brought under state law – because the effect of those doctrines would be that the party subject to those doctrines would pay a rate other than the tariff rate.

Here, since Federal law squarely places the burden on the servicer to adjust mortgage accounts after the fact, any state law doctrine relieving it of that burden is preempted. In addition, since federal law requires the servicer to make sure that its conduct complies with applicable requirements, it cannot "rely" on the borrower in that regard, as is required for estoppel.

Therefore, Counts I, II, and III should not be dismissed based on estoppel.

C. **Plaintiffs Did Not Waive Their Right to Allege Counts I, II, and III**

Rushmore alleges that Plaintiffs waived their right to contest the unauthorized property inspection fees.

Waiver is not a defense to FDCPA claims, except as specified by the FDCPA itself. "Out of an abundance of caution, we further note what should be obvious: a consumer's consent cannot waive protection from the practices the FDCPA seeks to eliminate, such as false, misleading, harassing or abusive communications. Permitting such a waiver would violate the public policy goals pursued by the FDCPA." *Clark v. Capital Credit & Collection Servs.*, 460 F.3d 1162, 1171, fn. 5 (9th Cir. 2006).

Waiver is also not a defense to a claim under the Illinois Consumer Fraud Act ("ICFA"). 815 ILCS 505/10c ("Any waiver or modification of the rights, provisions, or remedies of this Act shall be void and unenforceable"). The FDCPA and the ICFA unambiguously protect consumers from unfair and deceptive practices, and "a court is not at liberty to depart from the plain language and meaning of the statute by reading into it exceptions, limitations or conditions that the legislature did not express." *Village of Bloomingdale v. CDG Enterprises, Inc.*, 196 Ill.2d 484, 493, 752 N.E.2d 1090 (2001).

In addition, Plaintiffs' claims cannot be dismissed on the basis of waiver because waiver is an affirmative defense that need not be avoided preemptively in the complaint. *Independent Trust Corp.*, 665 F.3d at 935. Finally, as discussed above, RESPA preempts application of waiver to immunize charges that are subject to refund under RESPA. Accordingly, Counts I, II, and III should not be dismissed based on waiver.

### D. The Voluntary Payment Doctrine Cannot be Used to Dismiss Counts I, II, and III

Rushmore also argues that by signing the loan modification, which included property inspection fees in the unpaid principal balance, Plaintiffs voluntarily paid the property inspection fees.

There is no voluntary payment defense for FDCPA claims. *Scott v. Fairbanks Capital Corp.*, 284 F.Supp.2d 880, 895 (S.D.Ohio 2003) ("the Court concludes that Defendant may not rely upon the voluntary payment doctrine to preclude Plaintiffs' proposed FDCPA claims"); *Cappetta v. GC Services LP*, 654 F.Supp.2d 453, 463-4 (E.D.Va. 2009) (Virginia's voluntary payment doctrine did not apply to plaintiff's claims against debt collector under the FDCPA); *Gonzalez v. Codilis & Assocs., P.C.*, 03cv2883, 2004 WL 719264 (N.D.Ill., March 30, 2004) ("because the Voluntary Payment Doctrine provides less protection to consumers than the FDCPA, it is preempted"); *Harper v. American Tel. & Tel. Co.*, 54 F.Supp.2d 1371, 1380-81 (S.D.Ga. 1999) (state law regarding voluntary payments cannot be used to prevent recovery of money obtained through mail fraud).

In *Hamid v. Stock & Grimes, LLP*, 876 F.Supp.2d 500 (E.D.Pa. 2012), the court rejected the application of a state law voluntary payment defense to FDCPA claims:

> The FDCPA is a federal law and accordingly state law defenses are not relevant here. *See, e.g., Allen v. LaSalle Bank*, 629 F.3d 364, 369 (3d Cir. 2011); *see also Cappetta v. GC Servs. L.P.*, 654 F. Supp. 2d 453, 464 (E.D. Va. 2009). In *Allen*, our Court of Appeals determined that a New Jersey state litigation privilege did not "absolve a debt collector from liability under the FDCPA" because "common law immunities cannot trump the FDCPA's clear application to the litigating activities of attorneys." *Allen*, 629 F.3d at 369 (internal citations and quotations omitted). Similarly, here S&G may not use a state common law doctrine to avoid paying damages required by the FDCPA.
> ...
> It is clear from its underlying purpose that debtors may recover for violations of the

FDCPA even if they have defaulted on a debt. It follows that debtors may recover the amount paid to settle a debt, if the debt collector violated the FDCPA in making the collection, as occurred here. Hamid paid some or all of the money she owed to Discover Bank only as a result of the untimely lawsuit filed by S&G on behalf of the Bank. If her payment was not a proper element of actual damages under the FDCPA, a debt collector could harass a debtor in violation of the FDCPA, as a result of that harassment collect the debt, and thereafter retain what it collected. We do not believe that Congress intended this result. (*Id.* at 502-503.)

Similarly, the court in *Abby v. Paige*, 10cv23589, 2013 WL 141145 at *9 (S.D.Fla., January 11, 2013), held that "the voluntary payment doctrine does not have the effect of precluding FDCPA claims." Furthermore, "[t]he elements of, and the defenses to, a federal cause of action are defined by federal law." *Howlett v. Rose*, 496 U.S. 356, 375 (1990).

With respect to Plaintiffs' state law claims, the "voluntary payment doctrine is generally considered to be an affirmative defense, and a plaintiff is not required to preemptively plead facts refuting such a defense." *Franze v. Bimbo Foods Bakeries Distribution, LLC,* 7:17cv03556, 2019 WL 1244293, at *4 (S.D.N.Y. Mar. 15, 2019); *See also Independent Trust Corp.*, 665 F.3d at 935. The complaint does not allege payment, but a loan modification. Rushmore claims that a loan modification constitutes an immediate payment of the unmodified loan, but cites no factual or legal basis for this contention.

The doctrine does not apply where the transaction involves necessary goods and services. For example, *Getto v. City of Chicago*, 86 Ill. 2d 39, 52, 426 N.E.2d 844, 850-51 (1981), held that a consumer is not required to refuse to pay part of his telephone bill because telephone service is a necessity and jeopardizing continued telephone service inherently constitutes duress. Similarly, in *Ross v. City of Geneva*, 71 Ill.2d 27, 373 N.E.2d 1342 (1978), the court held that electric service was a necessity and that one need not refuse to pay one's electric bill in full in order to challenge a small portion of it. In *Geary v. Dominick's Finer Foods, Inc.,* 129 Ill.2d 389, 544 N.E.2d 344 (1989), the court held that a sales tax imposed on tampons and sanitary napkins could be challenged notwithstanding the voluntary payment doctrine, because the items were necessities which could not be purchased without paying the tax imposed. The court rejected defendants' argument that plaintiffs should be required to plead and prove that

-7-

defendants actually threatened or coerced them to pay the extra tax. *Geary,* 129 Ill.2d at 399–401, 544 N.E.2d 344.

Finally, in *Midwest Med. Records Ass'n, Inc. v. Brown,* 2018 IL App (1st) 163230, ¶ 30, 97 N.E.3d 125, 133, the court held that a fee charged by the clerk of the circuit court as a condition of filing a motion to vacate could be challenged notwithstanding the voluntary payment doctrine, because the filer's access to the court system depended on payment.

One's home, involved in this case, is even more of a necessity. If a consumer need not default on his telephone or electric service to avoid the voluntary payment doctrine, he need not default on his home mortgage.

Rushmore cites several old cases for the proposition that potential legal actions fail to rise to the level of duress as a matter of law. *Stone's Beauty Shops v. Morrison Serv. Ass'n*, 285 Ill.App. 163, 1 N.E.2d 816, 818 (1st Dist. 1936); *Lackey v. First Nat. Bank of Oblong*, 309 Ill.App. 308, 32 N.E.2d 949, 954 (4th Dist. 1941); *Helmick v. Carter*, 171 Ill. App. 25, 30 (3d Dist. 1912). None involved a person's home nor an active foreclosure, where common sense would indicate duress.[1]

In addition, voluntary payment is not a defense where there is a continuing relationship, there is no question that the payor had to make payments, and the issue is whether the payee properly applied the payments. *Lee v. Allstate Life Ins. Co.*, 361 Ill. App. 3d 970, 977, 838 N.E.2d 15, 22 (2d Dist. 2005).

Finally, state law relating to voluntary payment is preempted where federal law – here RESPA – expressly provides that an account is subject to adjustment. *World-Link, Inc. v. Mezun.com, Inc.*, *supra.* Thus, Counts I, II, and II should not be dismissed based on the voluntary payment doctrine.

---

[1]Also, *Helmick* is a pre-1935 Appellate Court decision, which is not precedent. *Bryson v. News Am. Publications, Inc.,* 174 Ill. 2d 77, 95, 672 N.E.2d 1207, 1217 (1996).

III.    **THE NOTICE OF DEBT AND THE MORTGAGE STATEMENT SUBJECT RUSHMORE TO FDCPA LIABILITY**

Rushmore argues that Counts I and IV should be dismissed because the "notice of debt" and the December 17, 2018 mortgage statement were not sent "in connection with the collection of any debt." Rushmore's argument is without merit.

A.    **Notice of Debt**

15 U.S.C. §1692g(a) states that "[w]ithin five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing" the prescribed information. The "notice of debt" is thus a disclosure requirement triggered by the fact that the debt collector has either engaged in a "communication with a consumer in connection with the collection of any debt" or plans to do so. A compliant "notice of debt" is a precondition to further collection activities. Accordingly, all "notices of debt" are sent "in connection with the collection of any debt" and inaccuracies in the "notice of debt" violate the FDCPA. *Janetos v. Fulton Friedman & Gullace, LLP*, 825 F.3d 317 (7th Cir. 2016).

The court in *Hart v. FCI Lender Servs., Inc.*, 797 F.3d 219, 226-27 (2d Cir. 2015) expressly held that a "notice of debt" is sent in connection with the collection of a debt:

> The Letter references Hart's particular debt... and refers to the FDCPA by name. More critically, it warns Hart that he must dispute the debt's validity within thirty days after receiving the Letter or his debt will "be assumed to be valid." Finally, and most importantly, the Letter, in its two-page attachment ... announces itself as an attempt at debt collection.... A reasonable consumer would credit the Letter's warning, its instruction to take action within thirty days, and its statement that it represents an attempt to collect a debt. (*Id.* citations omitted).

Each of these observations also applies to the notice of debt at issue here.

Rushmore cites the pre-*Janetos* case of *Whalen v. Specialized Loan Servicing, LLC*, 155 F.Supp.3d 905 (W.D.Wis., 2016), comparing the February 19, 2015 letter in that case to the notice of debt sent by Rushmore. First, there is nothing in *Whalen* to suggest that a §1692g notice of debt cannot also be a communication sent in connection with the collection of a debt.

Additionally, the February 19, 2015 letter in *Whalen* included a disclaimer for consumers, such as the plaintiff there, who received a discharge of their debt in bankruptcy: "If you ... have received a bankruptcy discharge of the home loan debt referenced above, this notice is for informational purposes only.  It should not be construed as an attempt to collect against you personally." *Id.* at 911.  This disclaimer is a key reason the court in *Whalen* held that the February 19, 2015 letter was not sent in connection with the collection of a debt, because the consumer did in fact have his debt discharged through bankruptcy.  A similar disclaimer is found in Rushmore's notice of debt:

> You should consider this letter as coming from a Debt Collector as we sometimes act as a Debt Collector and any information received will be used for that purpose.  However, if you are in Bankruptcy or received a Bankruptcy Discharge of this debt, this letter is not an attempt to collect a debt and does not constitute a notice of personal liability with respect to the debt.  (App. B to Cmplt.)

However, unlike the consumer in *Whalen*, Plaintiffs' debt was ***not*** discharged through bankruptcy. By clarifying that the letter is not an attempt to collect a debt in the case of a debt discharged through bankruptcy, Rushmore implied that the letter is an attempt to collect a debt in all other circumstances.  **Rushmore also makes a point of stating that the notice of debt is coming from a debt collector.**

### B.   Mortgage Statement

Rushmore argues that its mortgage statements do not "demand" payment and are required by the Truth in Lending Act ("TILA").

### 1.   Content of Statements

The absence of a demand for payment is just one of several factors that come into play when determining whether a communication from a debt collector is made "in connection with the collection of any debt." *Gburek v. Litton Loan Servicing LP*, 614 F.3d 380, 385 (7th Cir. 2010).  The nature of the parties' relationship is another relevant factor courts use to determine whether a communication is attempting to collect a debt. *Id.*  Here, the only relationship between Plaintiffs and Rushmore is that of debtor and loan servicer.

In *Ruth v. Triumph Partnerships*, 577 F.3d 790 (7th Cir. 2009), the court examined a

privacy notice which a debt collector sent to a debtor along with a collection letter. The court held the communications fell under the FDCPA because "[t]he only relationship the defendants had with the plaintiffs arose out of ... the plaintiffs' defaulted debt." *Id.* at 799. Furthermore, the court noted that defendants would not have otherwise sent plaintiffs those materials unless they were attempting to collect a debt. *Id.*

The relationship between Rushmore and Plaintiffs is identical to the relationship in *Ruth*, as they both exclusively arose from a defaulted loan. Thus, the December 17, 2018 mortgage statement and the notice of debt are communications sent in connection with the collection of a debt because Rushmore would not have sent Plaintiffs these communications unless it was attempting to collect a debt.

Moreover, monthly mortgage statements look and feel like bills because "they describe an amount due on the loan by an imminent future date, describe late fees that will be incurred if payment is not received by that date, and reflect charges for amounts past due." *Folkerts v. Seterus, Inc*., 17cv4171, 2019 WL 1227790, at *14 (N.D. Ill. Mar. 15, 2019). In this case, the December 17, 2018 mortgage statement also discusses options for resolution of the debt. Bills invariably attempt to collect money, so monthly mortgage billing statements are clearly sent in connection with the collection of a debt, which is made all the more obvious when the billing statement includes options for resolution of the debt.

*Bailey v. Sec. Nat'l Servicing Corp.*, 154 F.3d 384, 388-89 (7th Cir. 1998), relied upon by Rushmore, involved the sending of a letter containing payment coupons for future payments on a debt that was no longer in default. It is not on point.

## 2.    Implied Repeal by Truth in Lending Act

The fact that mortgage statements are required by other laws does not exempt them from the FDCPA. The court in *Hart v. FCI Lender Servs., Inc., supra*, 797 F.3d at 226-27 (2d Cir. 2015), also rejected this argument. In *Hart*, the plaintiff alleged that a notice sent by his mortgage servicer violated the FDCPA, even though the notice was required under the RESPA. *Id.* at 220. The mortgage servicer argued that because the letter "was intended merely to comply

-11-

with RESPA by providing certain information[,] ... it was not aimed at collecting a debt[ ] and thus did not trigger the FDCPA[ ]." *Id.* at 223 (alterations and quotation omitted).

The fact that both TILA and the FDCPA apply to a communication does not create an exemption. "The purpose of … the mortgage servicing regulations is to help borrowers maintain home ownership, whereas the purpose of the FDCPA 'is to protect consumers from abusive, deceptive, and unfair debt collection practices'… Although the laws address different subjects, their goals are not mutually exclusive." *Matmanivong v Nat'l Creditors Connection, Inc.*, 79 F.Supp.3d 864, 872-3 (N.D. Ill. Feb. 9, 2015). "[Compliance with] the mortgage servicing regulations do[es] not preclude liability under the FDCPA." *Id.* at 873-74. A loan servicer and debt collector, like Rushmore, can and should comply with both laws. *Id.* at 872. In *Randolph v. IMBS, Inc.*, 368 F.3d 726, 730 (7th Cir. 2004), the Seventh Circuit held that where two statutes apply to a communication, both must be complied with except in the unusual case where it is impossible to do so. Here, nothing in TILA requires noncompliance with the FDCPA.

Furthermore, the FDCPA expressly addresses the subject of whether documents required by other statutes must comply. 15 U.S.C. §1692g(e) explicitly lists which communications pursuant to other federal laws are exempted from the FDCPA:

**(e) Notice Provisions**

**The sending or delivery of any form or notice which does not relate to the collection of a debt and is expressly required by title 26, title V of Gramm-Leach-Bliley Act [15 U.S.C. 6801 et seq.], or any provision of Federal or State law relating to notice of data security breach or privacy, or any regulation prescribed under any such provision of law, shall not be treated as an initial communication in connection with debt collection for purposes of this section.**

TILA is not listed.

### 3. CFPB Bulletin 2013-12

Rushmore's argument that CFPB Bulletin 2013-12 makes its TILA-required monthly mortgage statements exempt from FDCPA liability because of their informational value is wrong and a misreading of the bulletin. The relevant section of CFPB Bulletin 2013-12, entitled "Servicing Rule Requirements with Regard to Borrowers Prohibiting Debt Collectors from

-12-

Communicating with Them," was written to provide guidance to loan servicers who were obligated under the 2013 amendments to RESPA and TILA (and their respective implementing regulations, Regulations X and Z) to communicate with borrowers who had fallen behind on their mortgage payments. *See* Implementation Guidance for Certain Mortgage Servicing Rules, 2013 WL 9001249 (CFPB Oct. 15, 2013). For example, 12 C.F.R. §1024.41 of Regulation X requires loan servicers to communicate with borrowers in default to send them loss mitigation information so that they can apply for mortgage assistance, and 12 C.F.R. §1026.41 of Regulation Z requires loan servicers to send those borrowers periodic statements about the financial details of the loans. The CFPB was concerned that loan servicers who were also debt collectors might violate the FDCPA if they communicated with borrowers who had also previously sent the loan servicer a "cease communication" request per 15 U.S.C. §1692c(c),which prohibits debt collectors from communicating with a consumer regarding a debt after receiving a "cease communication" request. Therefore, the CFPB provided guidance that in situations where the loan servicer/debt collector was communicating with the delinquent borrower pursuant to the specific requirements contained in the CFPB Bulletin[2], there would be no FDCPA liability for the loan servicer/debt collector even if the borrower had previously sent a "cease communication" instruction.

The CFPB Bulletin 2013-12 is very specific about providing the loan servicer/debt collector protection ***only*** from 15 U.S.C. §1692c(c) and ***only*** when the borrower has sent the loan servicer/debt collector a "cease communication" instruction. Thus, Rushmore's argument that somehow CFPB Bulletin 2013-12 provides Rushmore blanket immunity for all FDCPA claims is completely without merit. In fact, because Plaintiffs are not asserting an 15 U.S.C. §1692c(c)

---

[2] "The CFPB concludes that the FDCPA "cease communication" option does not generally make servicers that are debt collectors liable under [15 U.S.C. §1692c(c) of] the FDCPA if they comply with certain provisions of Regulation X (12 C.F.R. §1024.35 (error resolution), §1024.36 (request for information), §1024.37 (forced-place insurance), and §1024.41 (loss mitigation)) and Regulation Z (12 C.F.R. §1026.20(d) (adjustable-rate mortgage (ARM) initial interest rate adjustment and §1026.41 (periodic statement))."

claim at all, then it does not matter whether or not Plaintiffs have previously sent Rushmore a "cease communication" instruction.

In *Foster v. Green Tree Servicing, LLC*, 8:15cv1878, 2017 WL 5151354, *5, *6 (M.D. Fla. Nov. 3, 2017), the defendant, who was aware that the plaintiff was represented by counsel, mailed three monthly billing statements to the plaintiff in violation of the 15 U.S.C. §1692c(a)2, which prohibits a debt collector from contacting a consumer if it knows that the consumer is represented by counsel. The defendant argued that the monthly billing statements were sent in compliance with TILA and Regulation Z and that CFPB Bulletin 2013-12 immunized it from liability. *Id.* The court found that the applicable section of CFPB Bulletin 2013-12, entitled "Servicing Rule Requirements with Regard to Borrowers Prohibiting Debt Collectors from Communicating with Them," did not apply because the plaintiff brought FDCPA claims under §1692c(a)(2), and not under §1692c(c), as described in the CFPB Bulletin. *Id.* The court also found that the three monthly billing statements included debt collection language not required by either TILA or Regulation Z, including payment coupons, due dates, and informing the reader that he or she may contact the defendant for the exact amount for reinstatement. *Id.* Therefore, the court found the three monthly billing statements were communications sent in connection with collection of a debt. *Id.*

Rushmore is making the same argument as the defendant in *Foster* that its compliance with TILA and CFPB Bulletin 2013-12 immunizes it from liability, and its monthly billing statements are not debt collection communications as a result. However, Plaintiffs are asserting FDCPA claims pursuant to §§1692e and 1692f and are not asserting FDCPA claims pursuant to §1692c(c), which is the section CFPB Bulletin 2013-12 protects debt collectors from. In addition, similar to the defendant in *Foster*, Rushmore's billing statements sent to Plaintiffs included debt collection language not required by RESPA or TILA, or Regulations X or Z, including payment coupons, due dates, and informing Plaintiffs that "the amount listed here may not be the full amount necessary to bring your account current. To obtain the most up-to-date amount due information, please contact us at the number listed in the Statement." Thus, using

-14-

the reasoning in *Foster*, Rushmore's argument that it is protected from FDCPA liability by complying with TILA and that CFPB Bulletin 2013-12 immunizes it from FDCPA liability falls flat on its face. "By specifying instances in which the FDCPA does not apply, the CFPB clearly intended the FDCPA to apply to mortgage servicers that are debt collectors in all other instances." *Matmanivong*, 79 F.Supp.3d at 873 (where the court interpreted CFPB Bulletin 2013-12). Accordingly, per *Foster*, Rushmore's monthly billing statements are communications sent in connection with collection of a debt.

### 4. Rushmore's Mortgage Statements Violate the FDCPA

Rushmore included unlawful debt collection language in its December 17, 2018 mortgage statement. Rushmore sent Plaintiffs a statement containing an "acceleration amount" and also stated that a late fee will be charged if payment is not received by a specified date. (App. C to Cmplt.)

After a loan is accelerated, there are no scheduled payments, and no late charges are appropriate. *See Wells Fargo Bank Minn. N.A. v. Guarnieri*, 308 B.R. 122, 128 (D. Conn. 2004) ("However, once the loan is accelerated, as was the case here, there are no further monthly payments due and the lender is therefore not required to incur administrative expense in handling late payments."); *Jackson v. Carrington Mortg. Servs.*, 17cv60516, 2017 WL 5513704 (S.D.Fla. Nov. 16, 2017). Threatening late charges for an accelerated loan in order to induce payment is not required by TILA and is not excluded from FDCPA liability.

### 5. The Cases Cited by Rushmore Are Not on Point

Rushmore misstates the majority of FDCPA caselaw relating to TILA required mortgage statements. Overall, the courts have not held that mortgage statements sent in connection with the collection of a debt are exempt from FDCPA coverage, even though certain information in the statements is required by TILA. *Folkerts*; 2019 WL 1227790, at *13.

Rushmore cites *Green v. Specialized Loan Servicing LLC*, 766 Fed.Appx. 777 (11th Cir. 2019), but the court there found that nothing in the subject mortgage statement, beyond what is required by TILA, violated the FDCPA. *Id.* at 784.

Similarly, most of the remaining cases Rushmore cites uncontroversially hold that the act of sending a TILA required mortgage statement does not violate the FDCPA. *Wagoner v. EverHome Mortg. Inc.*, 17cv8081, 2018 WL 2230553, at *4 (D.N.J. May 16, 2018); *Saafir v. Bayview Loan Servicing, LLC*, 17cv3735, 2018 WL 1069413 (D.N.J. Feb. 26, 2018), aff'd, 751 F. App'x 166 (3d Cir. 2018); *Hill v. DLJ Mortg. Capital, Inc.*, 15cv3083, 2016 WL 5818540, at *9 (E.D.N.Y. Oct. 5, 2016).

Unlike the mortgage statements in the aforementioned cases, Rushmore's December 17, 2018 mortgage statement includes a misrepresentation made in order to collect on a debt, specifically a threat to charge late fees to induce payment from Plaintiffs. In fact, the court in *Saafir* observed that a mortgage statement that does "unfairly represent, fail to disclose a material truth, instill a false belief, or otherwise deceive a consumer into misinterpreting their contents" would violate the FDCPA. *Saafir*, 2018 WL 1069413, at *3.

Rushmore does cite two cases from the Southern District of Florida for the proposition that misrepresentations in TILA required mortgage statements, which would induce a consumer to make a payment, are not actionable under the FDCPA. *Brown v. Select Portfolio Servicing, Inc.*, 16cv62999, 2017 WL 1157253, at *2 (S.D. Fla. Mar. 24, 2017); *Antoine v. Carrington Mortg. Servs. LLC*, 17cv61216, 2017 WL 3404389, at *2 (S.D. Fla. Aug. 8, 2017). However, these cases are flatly contrary to the Seventh Circuit decision in *Randolph v. IMBS, supra*, which is binding on this Court, and which holds that one federal statute does not displace another unless compliance with both is impossible. *See also Matmanivong*, 79 F.Supp.3d at 872 (where court reasoned that FDCPA and TILA are not mutually exclusive and a debt collector can comply with both).

Thus, because Rushmore's mortgage statement misrepresents its right to collect late charges on an accelerated loan, it violates §1692e. Counts I and IV should therefore not be dismissed.

-16-

## IV.     THE NOTICE OF DEBT AND MORTGAGE STATEMENT ARE MISLEADING

Rushmore contends that Count IV should be dismissed because the notice of debt and the December 17, 2018 mortgage statement do not seek to recover amounts not permitted by law or the loan document.  This is not the case, as Rushmore's communications falsely assert that it has the right to collect late fees not authorized by Plaintiffs' mortgage agreement. (Ex. 1 to Def. Mot. to Dismiss)

### A.     Plaintiffs' Mortgage Does Not Authorize Charging Late Fees Upon Reinstatement

Rushmore argues that Plaintiffs' mortgage agreement allows the charging of late fees in the case of reinstatement.  This is not true.  To be clear, the reinstatement provision in Plaintiffs' mortgage agreement states:

> **Reinstatement.** Borrower has a right to be reinstated if Lender has required immediate payment in full because of Borrower's failure to pay an amount due under the Note or this Security Instrument. This right applies even after foreclosure proceedings are instituted. To reinstate the Security Instrument, Borrower shall tender in a lump sum all amounts required to bring Borrower's account current including, to the extent they are obligations of Borrower under this Security Instrument, foreclosure costs and reasonable and customary attorneys' fees and expenses properly associated with the foreclosure proceeding.    (Ex. 1 to Def. Mot. to Dismiss)

There is no mention of late fees in the reinstatement provision.  Rushmore emphasizes the phrase "*all amounts required to bring Borrower's account current*" without explaining how these words cover post-acceleration late fees.  Plaintiffs' Mortgage in no way authorizes Rushmore to charge late fees after acceleration and Rushmore's references to a differently worded reinstatement clause in *Rizzo v. Pierce & Assocs.*, 351 F.3d 791 (7th Cir. 2003) are inappropriate.

Nevertheless, even if Plaintiffs' mortgage agreement did allow for the recovery of late fees upon reinstatement, neither the notice of debt nor the December 17, 2018 mortgage statement specify that late fees will *only* be collected upon reinstatement.  The notice of debt simply states that "[t]he Total Amount of Your Debt is subject to change as a result of interest and other accruing charges (such as Late Charges, Legal Fees and Costs, and Other Charges)." (App. B. to Cmplt.)  Similarly, the December 17, 2018 mortgage statement informs Plaintiffs

-17-

that "[i]f payment is received after 01/17/2019, a $38.60 late fee will be charged." (Cmplt., App. C)  Thus, even under Rushmore's misinformed reading of the mortgage agreement's reinstatement provision, Rushmore's communications were false and misled Plaintiffs about Rushmore's ability to charge late fees.

Rushmore cites *Rizzo*, which allowed late fees to be collected after a loan was accelerated if the mortgage authorized it and the borrower reinstated the loan per the mortgage agreement. *Rizzo*, 351 F.3d at 793-4.  Rushmore misreads *Rizzo* to allow Rushmore to threaten late fees on a notice of debt and mortgage statements when it clearly does not have the right to do so.

Further, Rushmore's reliance on Rizzo is unavailing.  First, *Rizzo* has been established law for 17 years and addressed a specific situation where the borrower reinstated his loan but believed the late fees were improper under the FDCPA.  Nevertheless, the mortgage authorized post-acceleration late fees in the event of reinstatement and therefore the *Rizzo* court properly dismissed the borrower's FDCPA claim. *Id.*  *Rizzo*'s reasoning is well settled law in numerous jurisdictions. *Home Loan Investment Bank, FSB, v. Goodness and Mercy, Inc.*, 10cv4677 , 2012 WL 1078886 *6 (E.D. N.Y. Mar. 30, 2012) (absent a contrary provision, post-acceleration late charges are unenforceable as a matter of law); *Security Mut. Life Ins. Co. of New York v. Contemporary Real Estate Assoc.*, 979 F.2d 329, 330 (3rd Cir. 1992) (in Vermont, New Jersey, Delaware and New York, post-acceleration fees are unenforceable).

However, in the event that a borrower is not seeking reinstatement, like Plaintiffs in the present case, post-acceleration late fees are impermissible and violate the FDCPA. *Wells Fargo Bank Minnesota N.A. v. Guarnieri*, 308 B.R. 122, 124 (2004) (interpreting *Rizzo* where if the plaintiff was paying the accelerated balance…"any attempt to collect post-acceleration late fees would be unenforceable under Illinois law");  *Jackson*; 2017 WL 5513704, at *3 (interpreting *Rizzo* where if the loan is not reinstated "late fees should not be incurred by Plaintiff post-acceleration, nor listed on a monthly mortgage statement…"); *Rodriguez v. Codilis & Assoc.*, 17cv03656, 2018 WL 1565596 *11 (N.D. Ill. Mar. 30, 2018) (interpreting *Rizzo* where post-acceleration fees contained in a payoff statement are impermissible).

-18-

Second, as Rushmore has threatened the imposition of late fees on the notice of debt and monthly mortgage statements sent to Plaintiffs, this deceptive and misleading conduct has caused confusion and anxiety for Plaintiffs as they are not aware of the correct amount of their debt with Rushmore. *Boucher v. Finance System of Green Bay, Inc.*, 880 F.3d 362, 367 (7th Cir. 2018); *Jackson v. Carrington Mortgage Services LLC, supra* (interpreting *Rizzo* where if the loan is not reinstated "late fees should not be incurred by Plaintiff post-acceleration, nor listed on a monthly mortgage statement…"). Threatening to collect post-acceleration late fees on the notice of debt and monthly mortgage statements violates the FDCPA, including in the following situations: (1) a payoff of the accelerated amount pursuant to a property sale; (2) a payoff of the accelerated amount pursuant to a refinance; (3) a resolution of a delinquent loan through a loan modification; (4) a resolution of a delinquent loan through a chapter 13 bankruptcy filing, where the borrower/debtor begins making monthly loan payments and pays the arrearage on a monthly chapter 13 payment plan; (5) a borrower/debtor making several months of payments short of a full reinstatement; (6) a statutory redemption pursuant to 5/15-1603; and (7) a statutory reinstatement (5/15-1602) per the concurrence by Judge Williams in *Rizzo*. *Rizzo*, 351 F.3d at 794-5.

Thus, all of the situations facing Plaintiffs regarding post-acceleration late fees are per se FDCPA violations (except for reinstatement pursuant to the mortgage, which is inapplicable here). Therefore, Rushmore violated the FDCPA as Rushmore has no justification to threaten late fees on the notice of debt and mortgage statements. The late fees are deceptive and confusing to the unsophisticated consumer who would not know whether or not the late fees are legally permissible or not. *Boucher*, 880 F.3d at 367 (where the district court's dismissal of the plaintiff's FDCPA claims, which stated that the defendant's collection letter threatened impermissible late fees, was reversed on appeal because the court found that the collection letter was misleading because an unsophisticated consumer would not know whether late fees were legally permissible or not); *Pantoja v. Portfolio Recovery Associates. LLC*, 852 F.3d 679, 687 (7th Cir. 2017) ("[w]here the FDCPA requires clarity, however, ambiguity itself can prove a

violation"); *Marshall-Mosby v. Corporate Receivables, Inc.*, 205 F.3d 323 326 (7th Cir. 2000) ("[t]he key consideration is 'that the unsophisticated consumer is to be protected against confusion whatever form it takes'") (citing *Bartlett v. Heibl*, 128 F.3d 497, 500 (7th Cir. 1997)).

For the purposes of §1692e, a statement is false if it would confuse an unsophisticated consumer. *Wahl v. Midland Credit Mgmt., Inc.*, 556 F.3d 643, 646 (7th Cir. 2009). Furthermore, a misrepresentation is material under §1692e if it could have influenced a consumer's decisions with regard to a debt. *Janetos v. Fulton Friedman & Gullace, LLP, supra*, 825 F.3d at 324. *Janetos* held that materiality is an objective standard. *Id.* There is no requirement that an FDCPA plaintiff prove reliance or that her decision making was actually affected by a representation.

An unsophisticated consumer with "reasonable intelligence" would feel compelled to pay off a loan more urgently while being threatened with the prospect of late fees being added to the debt. Rushmore therefore violated §1692e of the FDCPA by falsely and deceptively threatening to charge late fees in order to induce Plaintiffs to pay a debt, when in fact such late fees were not legal, and could not be sought. Thus, Count IV should not be dismissed.

**B.   Rushmore's Mortgage Statement Does Not Track the CFPB-Approved Template**

Rushmore lastly argues that the December 17, 2018 mortgage statement substantially tracks the template account statement provided by the CFPB in 12 C.F.R. part 1026 App. H-30(B), supposedly exempting Rushmore from liability for misrepresentations found in its mortgage statement.

The use of the template does not exempt a defendant if incorrect numbers are inserted. The template states, "If payment is received after 4/25/12, $100 late fee will be charged." No one would seriously suggest that this language exempts a defendant if (a) the date after which a late fee is charged is the 15th of the month or (b) the amount of the late fee is $50. *Shields v. Lefta, Inc*., 888 F. Supp. 894, 897 (N.D. Ill. 1995) ("Defendant appears to be arguing that as long as it used the model form, it could put false information on the form and be immune from any TILA claim for its compliance, which neither makes sense nor follows from TILA and TILA

-20-

caselaw"). Rather, it is obvious that the form requires insertion of dates and numbers that fit the case at hand. This is clear from 12 C.F.R. §1026.41(c), which states that "[*p*]*roper use* of these forms complies with the requirements of this paragraph (c) and the layout requirements in paragraph (d) of this section," and 12 C.F.R. §1026.41(d), which requires the statement to disclose "(ii) [t]he amount of any late payment fee . . . ." *Boucher v. Finance System of Green Bay, Inc., supra* (safe harbor language must be adapted to particular case).

Some loans do not provide a late fee at all – they simply provide for interest on the outstanding balance. In such a case, the appropriate number to insert for the late fee in the model form is $0. Similarly, if the statement is sent on an accelerated loan and the amount of the late fee that may currently be charged is $0, that is what must be inserted.

Therefore, Rushmore's citation of 15 U.S.C. §1692k(e) is inappropriate because the December 17, 2018 mortgage statement did not comply with TILA and Regulation Z. Even if Rushmore did strictly follow the CFPB-approved template, a template is not a CFPB advisory opinion, making references to 15 U.S.C. § 1692k(e) further inapplicable. Moreover, the permitted use of a CFPB-approved template should have "no bearing on the question whether the language was 'in connection with the collection of any debt' within the meaning of § 1692e," *Whalen*, 155 F.Supp.3d at 912, much like how the question of whether the December 17, 2018 mortgage statement is required under 12 C.F.R. § 1026.41 has no bearing. As the December 17, 2018 mortgage statement misrepresented Rushmore's ability to collect unauthorized late charges, Rushmore is subject to liability for violating § 1692e. Accordingly, Count IV should not be dismissed.

**V.      CONCLUSION**

For the reasons stated above, Rushmore's motion to dismiss the complaint should be denied.

Respectfully submitted,

*/s/Daniel S. Miller*
Daniel S. Miller

Daniel A. Edelman
Tara L. Goodwin
Daniel S. Miller
**EDELMAN, COMBS, LATTURNER
     & GOODWIN, LLC**
20 S. Clark Street, Suite1500
Chicago, Illinois 60603
(312) 739-4200
(312) 419-0379 (FAX)
courtecl@edcombs.com

### <u>CERTIFICATE OF SERVICE</u>

I, Daniel S. Miller, hereby certify that on Thursday, June 4, 2020, I caused a true and accurate copy of the foregoing document to be filed via the courts CM/ECF online system, which sent notice via email to all counsel of record.

<u>*/s/Daniel S. Miller*</u>
Daniel S. Miller

Daniel A. Edelman
Tara L. Goodwin
Daniel S. Miller
**EDELMAN, COMBS, LATTURNER**
     **& GOODWIN, LLC**
20 S. Clark Street, Suite1500
Chicago, Illinois 60603
(312) 739-4200
(312) 419-0379 (FAX)
courtecl@edcombs.com

-23-