IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DAVID PAGAN, et al., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | No. 19-cv-07935 |
| v. ) | |
| ) | Judge Andrea R. Wood |
| RUSHMORE LOAN MANAGEMENT ) | |
| SERVICES LLC, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

This case concerns whether Defendant Rushmore Loan Management Services LLC ("Rushmore") violated the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.*, in its communications with Plaintiffs David Pagan and Cristina Ortiz ("Plaintiffs") and other similarly situated borrowers. After Plaintiffs defaulted on a mortgage for their home in Oswego, Illinois, servicing of Plaintiffs' loan was transferred to Rushmore. Rushmore subsequently mailed a Notice of Debt and a Mortgage Statement to Plaintiffs, which they allege violated the FDCPA by containing false and misleading information regarding (1) whether Rushmore was allowed to charge Plaintiffs for multiple home inspections and (2) whether Plaintiffs were liable for late fees incurred after their loan defaulted and was accelerated. Now, Rushmore has moved to dismiss Plaintiffs' Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). (Dkt. No. 19) For the reasons that follow, the Court denies Defendant's motion.

## BACKGROUND

For the purposes of Rushmore's motion to dismiss, the Court accepts as true the well-pleaded facts in the Complaint and views them in the light most favorable to Plaintiffs. *See*

*Firestone Fin. Corp. v. Meyer*, 796 F.3d 822, 826–27 (7th Cir. 2015). The Complaint alleges as follows.

Rushmore is a mortgage servicer. (Compl. ¶¶ 11–12, Dkt. No. 1.) Plaintiffs own and reside in a home in Oswego, Illinois (the "Property"). (*Id.* ¶ 9.) In 2016, Plaintiffs defaulted on their home loan and the loan was accelerated (meaning the lender invoked its right to demand payment of the entire balance). (*Id.* ¶ 16.) Rushmore began servicing Plaintiffs' loan on December 3, 2018, replacing Fay Servicing, LLC. (Compl., Ex. A., Notice of Servicing Transfer at 1, Dkt. No. 1-1.) On December 11, 2018, Rushmore mailed a Notice of Debt letter to Plaintiffs that summarized Plaintiffs' debt on the mortgage and further stated, "The Total Amount of Your Debt is subject to change as a result of interest and other accruing charges (such as Late Charges, Legal Fees and Costs, and Other Charges)." (Compl., Ex. B., Notice of Debt at 1, Dkt. No. 1-2.) On December 17, 2018, Rushmore mailed a Mortgage Statement to Plaintiffs, listing the "Reinstatement Amount Due" as $97,350.19 and adding, "If payment is received after 01/17/2019, a $38.60 late fee will be charged." (Compl., Ex. C, Mortgage Statement at 1, Dkt No. 1-3.) The Mortgage Statement also listed an "acceleration amount" of $287,259.24, representing the sum of Plaintiffs' accelerated debt. (*Id.*)

On January 10, 2019,[1] Plaintiffs sent a letter to Rushmore stating that Plaintiffs resided at the Property and did not consent to Rushmore's agents entering the Property. (Compl. ¶ 24.) Plaintiffs have continually occupied and maintained the Property. (*Id.* ¶ 30.) Nevertheless, Rushmore inspected the property five times between December 2018 and April 2019, charging Plaintiffs $20 for each inspection. (*Id.* ¶ 31.) Those charges were added to Plaintiffs' outstanding mortgage balance and listed on monthly mortgage statements that Rushmore sent to Plaintiffs. (*Id.*

---

[1] The Complaint gives this date as January 10, 2018, which is clearly a typo; Rushmore did not begin servicing Plaintiffs' mortgage until December 2018.

¶¶ 33–34.) In June 2019, Plaintiffs obtained a permanent loan modification ("Loan Modification"), and the property inspection fees were added to the principal balance. (*Id.* ¶ 36.) Plaintiffs agreed to the Loan Modification both because they feared losing their home and because they were concerned about accumulating fees. (*Id.* ¶ 37.)

Plaintiffs assert four claims in their Complaint. Count I alleges that Rushmore violated the FDCPA, 15 U.S.C. §§ 1692e, 1692f, 1692g, by charging Plaintiffs for unauthorized property inspection fees and representing that it had the right to collect such fees. Counts II and III respectively allege that the same conduct also violated the Illinois Consumer Fraud Act ("ICFA"), 815 ILCS 505/2, and constituted a breach of contract. Plaintiffs also make class allegations for Counts I, II, and III, on behalf of putative classes of persons charged inspection fees by Rushmore under similar circumstances (the class allegations are not pertinent to the present motion to dismiss). Finally, Plaintiffs bring Count IV in their individual capacity only, alleging that Defendants violated the FDCPA by threatening to impose late fees on Plaintiffs' accelerated loan balance.

## DISCUSSION

Rushmore has moved to dismiss all Plaintiffs' claims pursuant to Rule 12(b)(6) for failure to state a claim. To survive a Rule 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). This pleading standard does not necessarily require a complaint to contain detailed factual allegations. *Twombly*, 550 U.S. at 555. Rather, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable

3

for the misconduct alleged." *Adams v. City of Indianapolis*, 742 F.3d 720, 728 (7th Cir. 2014) (quoting *Iqbal*, 556 U.S. at 678).

To state a claim under the FDCPA, Plaintiffs must allege that (1) Rushmore is a "debt collector" pursuant to 15 U.S.C. § 1692a(6), (2) the challenged actions were "in connection with the collection of any debt," and (3) the actions violated a substantive provision of the FDCPA. *Gburek v. Litton Loan Servicing LP,* 614 F.3d 380, 384 (7th Cir. 2010) (citation omitted). Rushmore does not dispute that it is a debt collector under the FDCPA. With respect to the third element, Plaintiffs specifically allege that Rushmore violated 15 U.S.C. §§ 1692e, 1692f, and 1692g, which prohibit false and misleading representations, prohibit unfair practices (including attempting to collect fees and charges not expressly authorized by agreement or permitted by law), and require disclosure of certain information.

## I. Estoppel, Waiver, and Voluntary Payment

Rushmore contends that various equitable defenses preclude Plaintiffs from obtaining relief on Counts I, II, and III. Generally, Plaintiffs are not required to anticipate or plead around affirmative defenses in their complaint. *NewSpin Sports, LLC v. Arrow Elecs., Inc.*, 910 F.3d 293, 299 (7th Cir. 2018) ("A plaintiff is not required to plead elements in his or her complaint that overcome affirmative defenses, such as statute-of-limitations defenses.") (citing *Indep. Tr. Corp. v. Stewart Info. Servs. Corp.*, 665 F.3d 930, 935 (7th Cir. 2012)). However, the Court may grant a motion to dismiss based on a defense when a party pleads itself out of court by alleging facts fatal to their claims. *See Indep. Tr. Corp.*, 665 F.3d at 935 ("[W]hen a plaintiff's complaint . . . sets out all of the elements of an affirmative defense, dismissal under Rule 12(b)(6) is appropriate.") (citation omitted).[2]

---

[2] Rushmore also contends for the first time in its reply brief that Plaintiffs' property inspection claims fail because Rushmore had a clear right to charge inspection fees based on the mortgage, citing the recent case

4

### A. Estoppel

Rushmore raises estoppel as an equitable challenge to Counts I, II, and III, contending that Plaintiffs acknowledged the validity of the inspection fees when they accepted the Loan Modification. In the Loan Modification, Rushmore argues, Plaintiffs represented that $292,047.50 was payable to Rushmore, an amount that included the $100 in inspection fees that Plaintiffs now challenge.

> Under Illinois law, there are six elements to an equitable estoppel defense:
>
> (1) the other party misrepresented or concealed material facts; (2) the other party knew at the time the representations were made that the representations were untrue; (3) the party claiming estoppel did not know that the representations were untrue when they were made and when they were acted upon; (4) the other party intended or reasonably expected the representations to be acted upon by the party claiming estoppel or by the public generally; (5) the party claiming estoppel reasonably relied upon the representations in good faith to his or her detriment; and (6) the party claiming estoppel has been prejudiced by his or her reliance on the representation.

*In re Scarlett Z.-D.*, 28 N.E.3d 776, 784–85 (Ill. 2015). The Illinois Supreme Court further has summarized the defense as follows: "The general rule is where A, by his or her statements and conduct, leads B to do something that B would not have done but for such statements and conduct, A will not be allowed to deny his or her words or acts to the damage of B." *Id.* at 784. The elements of equitable estoppel for Plaintiffs' federal claim are essentially the same, requiring "(1) misrepresentation by the party against whom estoppel is asserted; (2) reasonable reliance on that misrepresentation by the party asserting estoppel; and (3) detriment to the party asserting estoppel." *Kennedy v. United States*, 965 F.2d 413, 417 (7th Cir. 1992) Federal promissory estoppel requires, "(a) a promise by the opposing party, (b) reliance on the promise by the

---

of *Dawoudi v. Nationstar Mortgage LLC*, 448 F. Supp. 3d 918, 924 (N.D. Ill. 2020). But, as Rushmore acknowledges, this argument was not raised in the initial motion to dismiss. Arguments raised for the first time in a reply brief are waived, and the Court will not consider them here, where Plaintiffs have not had an opportunity to respond. *See Wonsey v. City of Chicago*, 940 F.3d 394, 398 (7th Cir. 2019).

proponent of estoppel, (c) the proponent's reliance was reasonable, and (d) the reliance caused a detriment to the proponent." *Molina v. First Line Sols. LLC*, 566 F. Supp. 2d 770, 781 (N.D. Ill. 2007). Promissory estoppel under Illinois law requires the same elements, and also that the promise is unambiguous and the reliance expected and foreseeable. *Id.*

For Rushmore to prevail on its motion to dismiss, the pleaded facts must show that Rushmore detrimentally relied on a promise or knowing misrepresentation by Plaintiffs.[3] But Plaintiffs have not clearly misrepresented anything. Although Plaintiffs agreed to pay a new Loan Modification balance of $292,047.50, the Loan Modification does not clearly indicate that the now-challenged inspection fees were rolled into the new balance. (Def.'s Mot. to Dismiss, Ex. 2, Loan Modification, Dkt No. 19-2.) Instead, the Loan Modification states only that the new balance owed incorporates "other amounts capitalized, which is limited to escrows and any legal fees and related foreclosure costs that may have been accrued." (*Id.* ¶ 1.) Thus, the Loan Modification on its face does not establish that Plaintiffs represented the validity of the inspection fees to Rushmore. It is similarly unclear how Rushmore relied on Plaintiffs' purported "misrepresentation." Rushmore asserts it would not have entered into the Loan Modification if it had known that Plaintiffs planned to sue. But Rushmore's reliance is merely conjectural at this stage, as Plaintiffs have not pleaded (and the Loan Modification does not prove) that Rushmore relied on their statements. Even if Plaintiffs agreed to pay the inspection fees, and such payment was consideration for the Loan Modification, Rushmore does not support its position that estoppel necessarily follows. Rushmore's failure to establish reliance or a connection between its reliance and its injury based on the pleadings before the Court is fatal to Rushmore's equitable and promissory estoppel claims at this stage. The Court need not reach Plaintiffs' further arguments

---

[3] In considering Rushmore's estoppel arguments, the Court takes judicial notice of the Loan Modification, which is a publicly recorded document. *See Hardaway v. CIT Group/Consumer Fin. Inc.*, 836 F. Supp. 2d 677, 686 (N.D. Ill. 2011) (taking judicial notice of publicly available documents.)

6

on the topic (including whether the Real Estate Settlement Procedures Act, 12 U.S.C. § 2605(e)(2), bars Rushmore's estoppel argument).

### B. Waiver

Rushmore also contends that Plaintiffs entered the Loan Modification agreement even though they then believed the property inspection fees had been improperly assessed and understood that those fees had been rolled into the Loan Modification agreement. Rushmore argues that it is inconsistent for Plaintiffs to have agreed to pay the Loan Modification amount while also asserting that included fees were unauthorized and improper.

To succeed in its waiver defense, Rushmore must show that Plaintiffs engaged in behavior that was inconsistent with an intent to enforce a known legal right. *See Anderson v. Holy See*, 878 F. Supp. 2d 923, 933 (N.D. Ill. 2012) (citing *People v. Blair*, 831 N.E.2d 604, 615 n.2 (Ill. 2005)); *Home Ins. Co. v. Cincinnati Ins. Co.*, 821 N.E.2d 269, 282 (Ill. 2004). But here, Rushmore has not shown that Plaintiffs engaged in such behavior. Specifically, Plaintiffs' Complaint does not allege that Plaintiffs knew that the inspection fees had been wrongly assessed, or that they had been rolled into the Loan Modification agreement, at the time Plaintiffs entered into the Loan Modification. Instead, Plaintiffs plead that (1) Plaintiffs' counsel sent Rushmore a letter stating that they did not consent to Rushmore's agents entering the property, and (2) the home inspection fees were unauthorized and improper. (Compl. ¶¶ 24, 34.) These facts, which the Court must accept as true at this stage in the proceedings, are consistent with Plaintiffs entering into the Loan Modification agreement *before* they realized that the home inspection fees were unlawfully imposed. As Rushmore has failed to show that Plaintiffs acted inconsistently with an intention to enforce their legal rights, the Court need not reach Plaintiffs' arguments that waiver is never a defense to an FDCPA or ICFA claim, or that RESPA preempts waiver defenses in this instance.

### C. Voluntary Payment

Finally, Rushmore contends that because Plaintiffs voluntarily paid the inspection fees, they are barred from challenging those fees pursuant to the ICFA or through a breach of contract claim. When Plaintiffs entered into the Loan Modification, they agreed to pay a new debt in the amount of $292,047.50—a debt against which Plaintiffs have already made payments. Rushmore argues that by making these payments, Plaintiffs relinquished the right to challenge the inspection fees.

In Illinois, the voluntary payment doctrine requires parties to challenge a demand for payment before making that payment, not after. *See Smith v. Prime Cable of Chi.*, 658 N.E.2d 1325, 1329 (Ill. App. Ct. 1995) ("Absent fraud, coercion or mistake of fact, monies paid under a claim of right to payment but under a mistake of law are not recoverable."). Here, however, the Complaint does not clearly establish that Plaintiffs actually paid the inspection fees at issue. It alleges: "On information and belief the property inspection fees were included in the principal balance in Plaintiffs' permanent loan modification, which they are now obligated to pay, and which they have been paying since it was granted in June, 2019." (Compl. ¶ 36.) Rushmore contends that when Plaintiffs accepted the Loan Modification, they thereby paid the property inspection fees by replacing an old debt for a new one. But Rushmore cites no legal authority for that position and the pleaded facts before the Court do not establish that Plaintiffs actually paid the property inspection fees. Plaintiffs may have made payments against a mortgage balance that included property inspection fees, but Rushmore has not argued that a partial payment of a debt triggers the voluntary payment doctrine. The Court need not reach the parties arguments regarding whether mortgage payments are payments for necessary goods and services and

8

therefore exempt from the voluntary payment doctrine, or their other arguments, because Rushmore has not identified sufficient facts before the Court to support the defense.

## II. Whether the Communications Were in Connection with Debt Collection

In addition to its equitable defenses, Rushmore also challenges Plaintiffs' FDCPA claims in Counts I and IV on the ground that its communications to Plaintiffs were merely "informational" and not made in connection with collection of a debt. Similarly, Rushmore claims that it is exempt from liability for its communications because it was required to send Plaintiffs information about their debt and mortgage statements under federal law.

Whether the informational content of the challenged communications saves them from FDCPA liability is a question of fact. "Whether a communication was sent 'in connection with' an attempt to collect a debt is a question of objective fact, to be proven like any other fact." *Ruth v. Triumph Partnerships*, 577 F.3d 790, 798 (7th Cir. 2009). "Courts consider (1) the presence or absence of a demand for payment, (2) the nature of the parties' relationship, and (3) the purpose and context of the communication." *Folkerts v. Seterus, Inc.*, No. 17 C 4171, 2019 WL 1227790, at *14 (N.D. Ill. Mar. 15, 2019) (citing *Gburek*, 614 F.3d at 384–86).

Here, the only relationship between Rushmore and Plaintiffs is that between a loan servicer and a lender—in other words, a debt collector and a debtor. As in *Ruth*, where the Seventh Circuit found that a privacy notice mailed to a debtor was sent in connection with collection of a debt, Rushmore's only connection with Plaintiffs "arose out of . . . [Plaintiffs'] defaulted debt." 577 F.3d at 799. The Notice of Debt does not directly demand payment; however, it does warn Plaintiffs that pursuant to the FDCPA, Rushmore will assume the debt is valid unless Plaintiffs dispute it within 30 days. (Notice of Debt at 2.) The Notice further states, "You should consider this letter as coming from a Debt Collector . . . and any information

9

received will be used for that purpose." (*Id.* at 1.) Thus, the Notice announces that if Plaintiffs provide information to Rushmore—for example, by disputing the debt—Rushmore will use that information to collect the debt. Similarly, the Mortgage Statement presents Plaintiffs with a "payment due date" and a "reinstatement amount due" and directly warns that Rushmore "is a Debt Collector, who is attempting to collect a debt." (Mortgage Statement at 1, 3.) For these reasons, the Court finds distinguishable *Whalen v. Specialized Loan Servicing, LLC*, 155 F. Supp. 3d 905, 911 (W.D. Wis. 2016). In *Whalen*, the debtor had undergone bankruptcy, and the notice of debt contained a prominent clause indicating that the communication was only informational (not attempting to collect a debt) if the debtor had undergone bankruptcy. *Id.* It is easy enough to conclude that a communication is only informational when sent to a person who cannot be collected against and the communication announces that the sender is not attempting collection.[4] But that reasoning does not dispose of the situation here. Plaintiffs have pleaded facts that readily support an inference that Rushmore's communications were sent in connection with an attempt to collect a debt.

Rushmore further contends that it should not be punished for sending the Mortgage Statement, because it was required to send that document pursuant to the Truth in Lending Act ("TILA"), 15 U.S.C. § 1601 *et seq.* TILA regulations require Rushmore to send Plaintiffs a periodic mortgage statement with specific content and layout requirements, including grouping together at the top of the first page the payment due date, amount of any late payment fee, the date on which that fee will be imposed, and the amount due. *See* 12 C.F.R. § 1026.41(d)(1). But Rushmore identifies no authority providing that mortgage servicers are entirely immune from

---

[4] The Court disagrees with Rushmore's contention that the *Whalen* court's discussion of the bankruptcy clause is *dicta*, as the holding directly rests the bankruptcy clause. *See Whalen*, 155 F. Supp. 3d at 911 ("Because I see no language in the letter that would lead plaintiff to doubt that the bankruptcy disclaimer applied to her, I am granting defendant's motion to dismiss.").

10

FDCPA claims when they send communications required by TILA regulations.[5] The most support Rushmore finds for its position is in the Consumer Financial Protection Bureau's ("CFPB") Bulletin 2013-12, which addressed a conflict between debt collectors' obligations to send regular account statements and debtors' rights to request that debt collectors to cease communications. *See* CFPB, *Bulletin 2013-12, Implementation Guidance for Certain Mortgage Servicing Rules*, 2013 WL 9001249 (2013). The Bulletin concludes that debt collectors are not liable for sending periodic statements "despite a consumer's 'cease communication' request." *Id.* But by its plain language, the Bulletin only addresses a debt collector's liability for sending certain required communications despite a cease communications request. It would be odd if a debt collector had free rein to make deceptive or misleading statements in required communications just because a debtor had asked them to cease communications. Further, as other courts in this District have held, the fact that the CFPB exempted certain communications from FDCPA liability (here, account statements sent after receiving a cease-communications request) suggest that the CFPB recognized that FDCPA liability would apply to other communications. *Matmanivong v. Nat'l Creditors Connection, Inc.*, 79 F. Supp. 3d 864, 873 (N.D. Ill. 2015) ("By specifying instances in which the FDCPA does not apply, the CFPB clearly intended the FDCPA to apply to mortgage servicers that are debt collectors in all other instances.").

As a final note, Rushmore contends in passing that Plaintiffs have failed to plead facts that support a violation of 15 U.S.C. § 1692g. As discussed above, § 1692g requires debt collectors to

---

[5] Rushmore cites six cases for the proposition that periodic account statements like the Mortgage Statement can never be subject to FDCPA liability because they are informational only and therefore not sent in connection with collection of a debt. The Court is not persuaded by the non-binding authority that Rushmore has mustered, and notes that some of the cases cited plainly do not address the question at issue. *E.g.*, *Green v. Specialized Loan Servicing LLC*, 766 F. App'x 777, 784–85 (11th Cir. 2019) (finding that language in a particular mortgage statement did not "rise[ ] to the level of being unlawful debt collection language" but not addressing whether TILA-required mortgage statements were *per se* exempt from FDCPA liability).

send certain information to debtors, including how much money is owed. Because Rushmore has not specifically explained why the facts pleaded by Plaintiffs do not sustain this claim, and the Court finds it plausible on its face that a debt collector could violate this requirement by incorrectly summarizing the debt owed (as Plaintiffs allege), the Court declines to dismiss Plaintiffs § 1692g claims based on Rushmore's minimal briefing of the issue.

### III. Whether Rushmore's Late-Fee Communications Were Misleading

Rushmore argues that Count IV must be dismissed because the Notice of Debt and Mortgage Statement accurately represent Rushmore's ability to charge late fees. First, it contends that it had the authority to assess late fees against Plaintiffs—at least if Plaintiffs chose to reinstate their loan—and therefore its communications about late fees and late charges were not misleading. Further, Rushmore argues that the challenged Mortgage Statement followed a CFPB template and is therefore exempt from liability.

Whether a communication in connection with debt collection is misleading under the FDCPA is a question of fact in the Seventh Circuit. *Lox v. CDA, Ltd.*, 689 F.3d 818, 822 (7th Cir. 2012) (citing *Walker v. Nat'l Recovery, Inc.,* 200 F.3d 500, 503 (7th Cir.1999)). Still, in some instances a court may resolve the question as a matter of law. FDCPA cases regarding allegedly deceptive communications fall into three categories: (1) communications that are plainly not misleading or deceptive; (2) communications that are not plainly misleading or deceptive to an unsophisticated consumer, but might be misleading or deceptive; and (3) communications that are misleading on their face. *Ruth*, 577 F.3d at 800–01. Where a communication plainly does not mislead or deceive, a court may properly grant dismissal or summary judgment against the plaintiff. *Id.* at 800. Even when a communication is not plainly deceptive, ambiguity causing confusion on the part of a debtor can constitute an FDCPA violation. *See Pantoja v. Portfolio*

12

*Recovery Assocs., LLC*, 852 F.3d 679, 687 (7th Cir. 2017) ("Where the FDCPA requires clarity . . . ambiguity itself can prove a violation."); *Marshall-Mosby v. Corp. Receivables, Inc.*, 205 F.3d 323, 326 (7th Cir. 2000) ("The key consideration is 'that the unsophisticated consumer is to be protected against confusion whatever form it takes.'") (quoting *Bartlett v. Heibl*, 128 F.3d 497, 500 (7th Cir. 1997)).

At the time Rushmore sent its communications to Plaintiffs, the mortgage had been accelerated—meaning that the lender had demanded full payment of the loan. Because the mortgage had been accelerated, Rushmore was no longer able to charge late fees on the monthly payments Plaintiffs owed. *See Rizzo v. Pierce & Assocs.*, 351 F.3d 791, 793 (7th Cir. 2003) ("[A] lender cannot demand payment of late fees for failure to make monthly payments after the loan has been accelerated."). But Rushmore states that it did not attempt to charge late fees, and instead only informed Plaintiffs that to invoke their reinstatement rights under the mortgage, they would need to pay any late fees that would have been charged had the loan not been accelerated. This leaves two questions: first, whether the mortgage requires Plaintiffs to pay "would-have-been-owed" late charges to reinstate the mortgage, and second, whether Rushmore made a deceptive or misleading communication regarding such payments.

Under the mortgage, Plaintiffs have a right to reinstate their loan as follows:

> Borrower has a right to be reinstated if Lender has required immediate payment in full because of Borrower's failure to pay an amount due under the Note or this Security Instrument. This right applies even after foreclosure proceedings are instituted. To reinstate the Security Instrument, Borrower shall tender in a lump sum all amounts required to bring Borrower's account current including, to the extent they are obligations of Borrower under this Security Instrument, foreclosure costs and reasonable and customary attorneys' fees and expenses properly associated with the foreclosure proceeding.

(Def.'s Mot. to Dismiss, Ex. 1, Mortgage ¶ 10, Dkt. No. 19-1.) The mortgage does not explicitly state that the late fees that would have been charged can be rolled into the reinstatement amount;

13

rather, it is ambiguous whether "all amounts required to bring Borrower's account current" implicitly includes whatever late fees would have been due had the loan not been accelerated. Rushmore contends that the contract language at issue in this case is substantially identical to the language in *Rizzo*, and that Rushmore therefore can charge late fees upon reinstatement. But in *Rizzo*, the contract language required the borrower to pay "all sums which would be then due under this Mortgage and the Note had no acceleration occurred" to reinstate the loan. *Rizzo*, 351 F.3d at 793. The *Rizzo* language directly drew on a counterfactual: how much would have been owed if no acceleration occurred? That language invites the application of would-have-been-owed late fees. But here, the reinstatement clause only references "all amounts required to bring Borrower's account current," mentioning only various lender costs associated with the default and acceleration (like foreclosure costs and attorneys' fees), but not mentioning late fees.

      The Court next considers whether Rushmore's communications were misleading, beginning with the Notice of Debt letter. It presents a post-acceleration debt of $286,295.42, including $0.00 in late fees, and states, "The Total Amount of Your Debt is subject to change as a result of interest and other accruing charges (such as Late Charges, Legal Fees and Costs, and Other Charges.)" (Notice of Debt at 1.) Here, Rushmore does not meet its burden of showing that the language was plainly not misleading or deceptive and therefore suitable for resolution on a motion to dismiss. At the time Rushmore sent the Notice of Debt, Plaintiffs' loan had been accelerated and was not subject to late charges. Rushmore contends that the "total amount" of debt was in fact subject to late charges because late fees would be due if Plaintiffs exercised their option to reinstate. But this argument fails both because Rushmore did not have a clear right to roll late fees into the reinstatement amount and because the Notice of Debt does not specify that late charges would only be applied if Plaintiffs opted to reinstate the loan and not otherwise.

14

Because Rushmore chose not to distinguish clearly that late charges could only be applied to Defendants' account if Defendants reinstated their loan, Rushmore fails in its argument that the Notice of Debt is plainly not misleading to an unsophisticated consumer.

The Mortgage Statement similarly fails to distinguish clearly that late charges would only be assessed if Plaintiffs chose to reinstate the loan. The Mortgage Statement includes an "Explanation of Amount Due" presenting two amounts due: a reinstatement amount of $97,350.19 as of December 17, 2018, and an acceleration amount due of $287,259.24 as of January 1, 2019. (Mortgage Statement at 1.) It also gives a "payment due date" of January 1, 2019 in the top right, although the document does not make clear which payment is due on that date (the reinstatement amount, the acceleration amount, or a monthly payment). (*Id.* at 1–2.) The document states (a second time) a "Reinstatement Amount Due" of $97,350.19 in the top right, with smaller text below stating "If payment is received after 01/17/2019, a $38.60 late fee will be charged." (*Id.* at 1.) Again, Rushmore contends that this document is not misleading because a late fee can be charged, although only if Plaintiffs reinstate the loan. But as with the Notice of Debt, Rushmore has not shown that the statement is plainly not misleading or deceptive. The Statement does not clearly indicate that the late fee applies only if Plaintiffs choose to reinstate the loan and under no other circumstances. Compounding this confusion, the "explanation of amount due" itemizes the reinstatement amount (listing overdue payments, fees and charges, and recoverable advances) but does not itemize the acceleration amount. (*Id.*) There is no way for a reader to tell whether previously charged late fees were applied only to the reinstatement amount, or to both the reinstatement amount and the acceleration amount. Thus, an unsophisticated consumer might not be able to determine from the statement whether the late fee applies only to the reinstatement amount or also to the acceleration amount.

15

Rushmore finally contends that because the Mortgage Statement "substantially tracks" a CFPB-approved template, the communication is necessarily not deceptive or misleading. Rushmore relies on 15 U.S.C. § 1692k(e), which exempts debt collectors from liability when they, in good faith, act in conformance with a CFPB advisory opinion. But Rushmore does not point to a CFPB advisory opinion to which it conformed; instead, Rushmore alleges substantial conformity with a CFPB template included as a regulation under the TILA, 15 U.S.C. § 1601 *et seq. See* 12 C.F.R. § 1026 app. H-30(B). The Mortgage Statement, however, does not "substantially track" the template Rushmore references: the template is designed for a mortgage that is delinquent, not one that has been accelerated upon, and therefore the template does not provide guidance on how to unambiguously present a late fee that applies only to a reinstatement amount and not to an acceleration amount. Further, Plaintiffs do not challenge whether Rushmore complied with the mortgage statement requirements under 12 C.F.R. § 1026.41(a)(2); instead, Plaintiffs allege that Rushmore wrongly threatened to assess illegal late fees against them. Rushmore does not support its position that a debt collector following a CFPB template is exempt from liability even when it includes deceptive or misleading information in that communication.[6] Rushmore's argued compliance with the template is irrelevant to the bottom-line issue of whether Rushmore threatened to collect a fee that it had no right to collect.

---

[6] The Court urges Rushmore to avoid citing cases for more than they are worth. For example, here Rushmore cites several cases for the proposition that "because the periodic account statements are informational only, no FDCPA liability can attach to the sending of those account statements, cease communication request or not." (Mot. to Dismiss at 15.) But Rushmore's cited cases do not support this broad proposition. For example, Rushmore cites a district court case finding that a challenged mortgage statement did not violate the FDCPA because the sender clearly announced that it was not seeking to collect a debt. *Saafir v. Bayview Loan Servicing, LLC*, No. CV 17-3735 (RBK/JS), 2018 WL 1069413 at *3 (D.N.J. Feb. 26, 2018). The case has nothing to do with whether periodic account statements are inherently only informational. Rushmore would have done better to have directly grappled with these limitations.

16

## CONCLUSION

For the above reasons, Defendant's Rule 12(b)(6) motion to dismiss (Dkt No. 19) is denied.

ENTERED:

Dated: December 17, 2020

_____

Andrea R. Wood
United States District Judge